## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DANIELLE L. NERI,

      Plaintiff,

vs.                                                                                    CIV 19-8 JCH/SCY

BOARD OF EDUCATION FOR
ALBUQUERQUE PUBLIC SCHOOLS
and CYNTHIA HOPPMAN,

      Defendants.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff Danielle Neri quit her teaching job with Atrisco Heritage Academy (part of Albuquerque Public Schools) after an assistant principal, Defendant Cynthia Hoppman, moved her from an IEP position to a math teaching position. Plaintiff has long suffered from post-traumatic stress syndrome ("PTSD") and, although she makes several arguments, the gravamen of her lawsuit is that, in violation of the American with Disabilities Act and the New Mexico Human Rights Act, Defendants took adverse action against her because of her disability. After this Court granted summary judgment in Defendants' favor on all Plaintiff's federal claims and remanded her state-law claims, she appealed to the Tenth Circuit. The Tenth Circuit affirmed in part and reversed in part, remanding some federal claims back to this Court. *See Neri v. Bd. of Educ. for the Albuquerque Pub. Schs.*, 860 F. App'x 556 (10th Cir. 2021). Upon remand, the parties filed a number of motions: (1) Plaintiff's Motion to Reinstate her Federal Discrimination Claims, Doc. 140; (2) Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment on Purported Retaliation Claim(s), Doc. 154; (3) Defendants' Motion for Summary Judgment on State Claims and Damages, Doc. 168; (4) Defendants' Motion for Reconsideration, Doc. 169; (5) Plaintiff's Motion to Strike Defendants' Motions for Summary Judgments, Motion

to Dismiss and Motion for Reconsideration due to Non-Compliance with Local Civil Rules of the United States District Court for the District of New Mexico (Doc. 183); (6) Plaintiff's Motion for Expedited Order for Defendants to File Other Relevant Parts of Deposition (Doc. 184); and (7) Plaintiff's Motion for Leave to File Surreply to Defendants' Supplemental Briefing in Support of Defendants' Motion for Summary Judgment on State Claims and Damages (Doc. 196). Additionally, the parties filed two sets of supplemental briefing: Plaintiff's Memorandum in Support of her Motion to Reinstate Federal Discrimination Claims with Particular Reference to her Retaliation Claim (Doc. 153) and Defendants' Supplemental Briefing in Support of Defendants' Motion for Summary Judgment on State Claims and Damages (Doc. 168).

After addressing each of these motions, I ultimately recommend that the Court find the following claims are no longer viable: Plaintiff's claims under the ADA and NMHRA for alleged discrimination based on actual impairment or record of impairment; hostile work environment; constructive discharge; failure to accommodate; and FMLA and disability retaliation claims.[1] This leaves on track for trial Plaintiff's claims for alleged discrimination under the ADA and the NMHRA based on a demotion because APS regarded Plaintiff as being disabled. For the remaining claims, I recommend that the Court find Plaintiff is unable to recover back and front pay and compensatory damages for her auto loan, moving expenses, and future pecuniary losses, but may seek compensatory damages for emotional distress.

---

[1] The Honorable Judith C. Herrera referred this matter to me pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), Doc. 37, and as such I enter this Proposed Findings and Recommended Disposition addressing the pending motions.

## FACTUAL BACKGROUND

The motions presently before the Court are a mix of summary judgment, motions to

dismiss, and other types of motions relating to several different claims brought by Plaintiff. To

the extent resolution of a motion is dependent on facts the Court must find, I will set forth the

facts I recommend the Court find specific to each motion when I analyze that specific motion (as

different levels of deference that apply to different motions could affect factual findings). For

context, however, I recite from the Tenth Circuit's Order the following factual background:

> Mrs. Neri worked for APS as a special education math teacher for several years.
> Starting in the 2013-2014 school year, however, she was chosen to fill a new
> position as the Individualized Educational Program (IEP) Teacher at a high school
> in Albuquerque with a large number of special-education students. As the IEP
> Teacher, her duties included ensuring that the school met federal standards for
> special education; creating procedures for IEPs; training teachers on IEP
> requirements; and facilitating and conducting meetings with students, parents,
> teachers, and service providers regarding students' IEPs. Mrs. Neri's first two
> school years as the IEP Teacher were uneventful.
>
> Things changed in the 2015-2016 school year. Mrs. Neri asserts that she "was
> under a yearlong attack, a group hunt orchestrated by" her supervisor, Ms.
> Hoppman. Aplt. Opening Br. at 18. "This attack was not so obvious to the
> observer, but it was to Mrs. Neri." *Id.* "Ms. Hoppman would change the
> requirements of the IEP teacher position[,] even procedures they had come up
> with, that had been proven to work." *Id.* (footnote omitted). "Ms. Hoppman
> sought to create a false paper trail showing Mrs. Neri was not doing her job" by
> sending e-mail messages inquiring as to the status of various IEPs. *Id.* One time,
> she sent an e-mail inquiring as to Mrs. Neri's whereabouts, after the end of the
> duty day.
>
> On April 14, 2016, Mrs. Neri led an IEP meeting for a student whose parent did
> not speak English. Daniel Kegler, a teacher attending the meeting, had not
> arranged for an interpreter to attend. When Mrs. Neri realized there was no
> interpreter, she cancelled the meeting. Mr. Kegler became frustrated. As Mrs.
> Neri describes, he "stood up with such force that his chair flew into the wall
> behind him, he then grabbed it and slammed it into the table, then slammed his
> laptop shut with his hand about 18 inches from Mrs. Neri's face." *Id.* at 19-20.
> The April 14 incident frightened Mrs. Neri and triggered her Post-Traumatic
> Stress Disorder (PTSD). She told Ms. Hoppman of the incident, her feeling that
> Mr. Kegler had assaulted her, and that he triggered her PTSD. Ms. Hoppman
> interviewed other staff members who had been in the meeting, who reported that

Mr. Kegler had not been violent. Ms. Hoppman told Mrs. Neri that she did not think the incident was a big deal.

The next day, April 15, Mrs. Neri had another IEP meeting involving Mr. Kegler. Ms. Hoppman sent a head teacher to attend the meeting with Mr. Kegler. Initially Mrs. Neri thought the head teacher was there to support her in case Mr. Kegler again lashed out. But during the meeting, she learned that Ms. Hoppman had sent the head teacher to support Mr. Kegler because she had just given him some bad news. Mrs. Neri believed that Ms. Hoppman had minimized her feelings about the April 14 incident, and she felt betrayed, unsupported, and unsafe.

Mrs. Neri took leave under the Family and Medical Leave Act (FMLA) from April 26 to May 9, 2016. Her leave was supported by a note from her therapist, licensed clinical social worker Billie Poteet. When Mrs. Neri returned to work, with only nine days left in the school year, she attempted to meet with Ms. Hoppman to discuss potential accommodations for her PTSD, but Ms. Hoppman avoided her.

On May 23, 2016, Ms. Hoppman conducted Mrs. Neri's year-end evaluation. Mrs. Neri felt that the evaluation was going well, until Ms. Hoppman told her that she (Ms. Hoppman) was transferring her (Mrs. Neri) to a special education math teacher position because Mrs. Neri "could not handle the contention of that room" and Ms. Hoppman "didn't want to trigger [Mrs. Neri] again." R. Vol. 1 at 268. Mrs. Neri considered the transfer to be a demotion. That night, she sent Ms. Hoppman an e-mail protesting the decision. Ms. Hoppman responded by identifying several areas in which Mrs. Neri had performed deficiently as the IEP Teacher during the 2015-16 school year, allegedly leading to her decision to transfer Mrs. Neri. She also stated, "[o]n a personal level, I am concerned about your health. I have seen your reactions to stressful situations become more apparent and frequent. The comments you made in your email exhibit a paranoia that you are being isolated and targeted." *Id.* Vol. 2 at 79.

Mrs. Neri took an unpaid personal leave of absence for the 2016-2017 school year. On March 8, 2017, she submitted her resignation to APS.

*Neri*, 860 F. App'x at 559–60.

## PROCEDURAL HISTORY

Plaintiff filed her Complaint for Employment Discrimination on November 9, 2018 in

state court. Doc. 1-1 at 8. Defendants Board of Education for the Albuquerque Public Schools

("APS") and Cynthia Hoppman[2] removed this action to federal court on January 7, 2019. Doc. 1.

Plaintiff's Operative Complaint—the Third Amended Complaint—alleges violations under the

Americans with Disabilities Act ("ADA") and the New Mexico Human Rights Act ("NMHRA")

for discrimination based on her position transfer, hostile work environment, constructive

discharge, failure to accommodate, and possibly retaliation.[3] Doc. 38.

After conducting discovery, Defendants moved for summary judgment on all Plaintiff's

claims. Doc. 68. I entered a Proposed Findings and Recommended Disposition ("PFRD") on

April 22, 2020, recommending that the Court grant summary judgment as to all Plaintiff's

federal claims and decline supplemental jurisdiction over her state-law claims, remanding them

to state court. Doc. 110. Over objection from Plaintiff, the presiding judge adopted the PFRD.

Doc. 119. Plaintiff appealed, and the Tenth Circuit affirmed in part and reversed and remanded

in part. Doc. 138.

The Tenth Circuit first looked at whether Plaintiff has a disability as defined by the ADA,

and held that Plaintiff had not established that she has an actual impairment. *Neri*, 860 F. App'x

at 563. The Tenth Circuit, however, found that a genuine issue of material fact exists as to

whether Defendants regarded Plaintiff as having a disability. *Id.* at 565. Turning to her claims of

adverse employment actions under the ADA, the Tenth Circuit affirmed this Court's grant of

summary judgment on Plaintiff's claims for constructive discharge and hostile work

environment. *Id.* at 567-68. The Tenth Circuit, however, reversed this Court's grant of summary

judgment on Plaintiff's demotion claim, finding that a genuine issue of material facts exists

---

[2] Cynthia Hoppman is sometimes referred to in exhibits by her previous last name, Ms. Benefield, or as Cindy.

[3] As will be discussed later in this PFRD, there is a question as to whether Plaintiff properly asserted a retaliation claim.

regarding whether the transfer was a demotion and therefore an adverse employment action. *Id.*
at 565. The Tenth Circuit next affirmed this Court's grant of summary judgment on Plaintiff's
failure to accommodate claim under the ADA. *Id.* at 568. Lastly, the Tenth Circuit directed this
Court on remand to consider whether Plaintiff properly asserted a retaliation claim. *Id.* In
addition to the federal claims revived as a result of the Tenth Circuit's decision and partial
reversal, the Court must also address the issue of supplemental jurisdiction over Plaintiff's state-
law claims. Because the Tenth Circuit has reversed this Court's grant of summary judgment on
one of Plaintiff's federal claims (discrimination based on the transfer because APS regarded her
as disabled), I recommend that the Court no longer decline supplemental jurisdiction over
Plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3) (district courts may decline supplemental
jurisdiction over state-law claims when "the district court has dismissed all claims over which it
has original jurisdiction").

      After the Tenth Circuit issued its mandate, Plaintiff filed with this Court a Motion to
Reinstate her Federal Discrimination Claims (Doc. 140), which is now fully briefed (Doc. 144
(response); Doc. 146 (reply)). Shortly thereafter, I held a status conference and set a briefing
schedule for motions related to the retaliation claim and any other dispositive motions. Doc. 142.
Instead of filing a new motion related specifically to her retaliation claim, Plaintiff filed a
supplemental brief regarding her motion to reinstate (Doc. 153), Defendants filed a supplemental
response (Doc. 156), and Plaintiff filed a supplemental reply (Doc. 166). Defendants also filed
several dispositive motions, which are fully briefed: (1) Defendants' Motion to Dismiss or in the
Alternative Motion for Summary Judgment on Purported Retaliation Claim(s) (Docs. 154, 164,
170); (2) Defendants' Motion for Summary Judgment on State Claims and Damages (Docs. 168,
172, 175); and (3) Defendants' Motion for Reconsideration (Docs. 169, 174, 178). Following

briefing of the dispositive motions, I ordered the parties to file supplemental briefs regarding an issue in Defendants' motion for summary judgment. Doc. 182. The parties filed the supplemental briefing (Docs. 186, 193, 194), and Plaintiff filed an opposed motion for a surreply to the supplemental briefing (Docs. 196, 199). Lastly, Plaintiff filed two motions addressing procedural concerns—her motion to strike (Docs. 183, 185, 187) and her motion to file depositions (Docs. 184, 189, 190). The Court held a hearing on several of the pending motions on August 18, 2022. *See* Doc. 204 (order setting hearing); Doc. 208 (clerk's minutes).

## ANALYSIS

I will address each pending motion in turn, first considering preliminary matters and then turning to motions on the merits of Plaintiff's claims.

### 1. Plaintiff's Motion for Deposition Transcripts (Doc. 184)

After the parties finished briefing all dispositive motions, Plaintiff filed a "Motion for Expedited Order for Defendants to File Relevant Parts of Deposition", in which she requests that Defendants be ordered to file on the docket a complete copy of the transcript from three depositions—that of her deposition, her expert witness Billie Poteet, and her witness Diane Horton—because she is unable to afford copies of the transcripts. Doc. 184; Docs. 189, 190 (response, reply); *see also* Doc. 193 at 4 (same argument made in supplemental briefing on summary judgment).

To support her request, Plaintiff cites Federal Rule of Civil Procedure 32(a)(6), New Mexico Rule 1-032(a)(4) NMRA, and Federal Rule of Evidence 106.[4] First, New Mexico state-

---

[4] Plaintiff also cites Federal Rule of Civil Procedure 32(a)(5)(B), which provides limitations for use of "[a] deposition taken without leave of court under the unavailability provisions of Rule 30(a)(2)(A)(iii) . . . ." Plaintiff provides no further information, such as which deposition she believes was taken under the unavailability provisions of Rule 30(a)(2)(A)(iii).

court procedural rules do not apply in this Court and so I need not consider Rule 1-032(a)(4). I instead turn to Federal Rule of Civil Procedure 32(a)(6) and Federal Rule of Evidence 106. Rule 32(a)(6) provides that "[i]f a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts." Rule 106, also known as the rule of completeness, similarly provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time."

Plaintiff cites these rules to argue that because Defendants attached portions of depositions as exhibits to their briefing on summary judgment, they should be required to file the entire depositions on the docket. As an initial matter, these rules appear to be applicable in hearings and at trial, not on summary judgment. *See* Fed. R. Civ. P. 32(a)(1) (rules of using depositions at a hearing or trial); *Chevron Mining Inc. v. United States*, No. 113-CV-00328 PJK-JFR, 2021 WL 5742987, at *1 (D.N.M. Dec. 2, 2021) ("The main purpose of Rule 32(a)(6) is to avoid testimony that presents evidence out of context or leads to misinterpretation of the evidence by the trier of fact."); *United States v. Lopez-Medina*, 596 F.3d 716, 735 (10th Cir. 2010) ("The purpose of Rule 106 is to prevent a party from misleading the jury by allowing into the record relevant portions of a writing or recorded statement which clarify or explain the part already received.") (citing *United States v. Moussaoui,* 382 F.3d 453, 481 (4th Cir. 2004)). Rather than offering an opinion as to what action the Court should take if, at trial, Defendants seek to introduce deposition testimony that Plaintiff believes is incomplete, I limit my analysis to whether the Court should order Defendants to file the complete transcripts Plaintiff requests so that she can use them in connection with the motions presently before the Court.

There is some support for the contention that these rules are appropriate to consider on summary judgment. *See Lopez v. Delta Int'l Mach. Corp.*, 312 F. Supp. 3d 1115, 1154–55 (D.N.M. 2018) (Browning, J.) ("The rule of completeness appears to be uniquely applicable in a trial setting. The purpose of Rule 106 is to prevent a party from misleading the jury, but there is no jury on a summary judgment motion. Nevertheless, the general principle animating the rule of completeness—guarding against deception—is appropriate at the summary judgment phase. A judge, just like a jury, should not be misled, especially on a dispositive motion." (internal quotation marks and citation omitted)). To the extent Rules 32(a)(6) and 106 are applicable to exhibits used in summary judgment briefing, I recommend rejecting Plaintiff's request that Defendants file the complete deposition transcripts. Plaintiff argues that she needs the complete deposition transcripts so that she can "point to the omitted deposition testimony that links Plaintiff's limitations to her diagnosed PTSD, as well as Ms. Poteet's testimony regarding Plaintiff's record of PTSD and the link between them and her limitations, of her 'actual' and 'record of' disability, which is medical evidence needed as the Tenth Circuit stated." Doc. 184 at 2; *see also* Doc. 190 at 4.[5] She also seeks Ms. Horton's complete deposition to "support[] the intentional discrimination and the effects of the intended humiliation creating an objectively hostile work environment, and that these actions would cause Plaintiff['']s constructive discharge." Doc. 184 at 2; *see also* Doc. 190 at 4.

---

[5] To support this argument, Plaintiff points to portions of Ms. Poteet's deposition, which she argues shows that Ms. Poteet "linked Plaintiff's undisputed diagnosis of PTSD and some limitation." Doc. 190 at 3 (citing Doc. 172-4). I disagree with Plaintiff's read of Ms. Poteet's depositions, attached as Doc. 172-4. In the cited deposition excerpts, Ms. Poteet discusses her treatment of Plaintiff and Plaintiff's symptoms, but does not "link Plaintiff's undisputed diagnosis of PTSD and some limitation." *See generally*, Doc. 172-4.

First, as discussed later in this PFRD, some of those claims which Plaintiff seeks to support with the depositions—hostile work environment and constructive discharge—are no longer viable. Additionally, Plaintiff has not shown why this evidence was uniquely obtainable via deposition testimony. Especially in the case of her own testimony, her own medical provider's testimony (Ms. Poteet), and her own witness (Ms. Horton), Plaintiff could have presented it in another format such as affidavits. To the extent the deposition testimony is not evidence at all, but mere argument from Plaintiff about her disability, it can be adequately presented by Plaintiff in briefing.

Plaintiff also argues that Defendants should file the complete deposition transcripts "so that she could point to other parts of these depositions to clarify the manipulated testimony." Doc. 184 at 2. Plaintiff is not specific as to what she claims Defendants have manipulated, giving this Court no basis to find that manipulation has occurred.

Lastly, in her supplemental brief regarding retaliation, Plaintiff makes a similar request that Defendants file on the record a complete copy of the deposition transcripts from her deposition, Billie Poteet's deposition, and Diane Horton's deposition; in support, Plaintiff this time cites Federal Rule of Civil Procedure 30(f). Doc. 153 at 7. She reads Rule 30(f) as requiring an attorney who cites a deposition to file the complete transcript on the docket. *Id.* Rule 30(f), in its current form, however, includes no such requirement.[6] Instead, it provides that "[w]hen paid reasonable charges, the officer must furnish a copy of the transcript or recording to any party or the deponent." Fed. R. Civ. P. 30(f)(3). If a party does file a transcript, that party must notify all

---

[6] Prior to 2000, Rule 30(f) provided that depositions would be sealed and filed with the court. That requirement was eliminated with the 2000 amendment to Rule 30(f).

other parties of the filing. Fed. R. Civ. P. 30(f)(4). This Court's local rules clarify that "[d]eposition transcripts are not filed unless otherwise ordered." D.N.M. LR-Civ. 30.3.

Though not fully developed by Plaintiff, her argument for deposition transcripts actually seems to be that she cannot afford to pay for the transcripts and so, in fairness, Defendants, who already have copies of the transcripts, should share them with Plaintiff. Yet, "[t]he general rule, established expressly by the Federal Rules of Civil Procedure, is that a party must obtain copies of deposition transcripts directly from the court reporter upon the payment of a reasonable charge, and not from opposing counsel or the court." *Schroer v. United States*, 250 F.R.D. 531, 537 (D. Colo. 2008); *see also Young v. United Parcel Serv., Inc.*, No. CIV.A. DKC 08-2586, 2014 WL 858330, at *3 (D. Md. Mar. 4, 2014) ("[I]t is typical that the court reporter be paid by each party receiving a copy of a transcript."); *Watson v. Ohio Ambulance Sols., LLC*, No. 1:20-CV-802, 2022 WL 2133739, at *3 (S.D. Ohio June 14, 2022) (collecting cases and holding that "Plaintiff has not directed the Court to any authority that would require a party to provide a copy of a deposition transcript, free of charge, to an opposing party").

Here, although Plaintiff states that she cannot afford the transcripts she desires, she has provided no information to substantiate that claim. And, even if she had, she has not cited any authority for an order requiring a civil defendant to pay for, and provide for free to a civil plaintiff, deposition transcripts. For these reasons, I recommend denying Plaintiff's Motion for Expedited Order for Defendants to File Other Relevant Parts of Deposition (Doc. 184) and her related requests for deposition transcripts made in other filings.

### 2. Plaintiff's Motion to Strike (Doc. 183)

Similar to her motion for depositions, after the parties finished briefing the dispositive motions, Plaintiff filed a "Motion to Strike Defendants' Motions for Summary Judgments,

Motion to Dismiss and Motion for Reconsideration Due to Non-Compliance with Local Civil Rules of the United States District Court for the District of New Mexico." Doc. 183; *see also* Docs. 185, 187 (response, reply). In this motion, Plaintiff raises two arguments that she also raises in other briefing: (1) the Court should strike Defendants' pending motion to dismiss and motion for summary judgment for failure to comply with Local Rule 56.1 and (2) the Court should strike Defendants' motion for reconsideration as untimely. Because the same analysis applies to each instance Plaintiff has raised these arguments, my analysis below applies to these arguments across all briefing—that is, the analysis applies regardless of when and where Plaintiff makes the argument.

I first address Plaintiff's assertion that the Court should strike Defendants' pending motion to dismiss and motion for summary judgment for failure to comply with Local Rule 56.1. Doc. 183; *see also* Doc. 172 at 4-5 & Doc. 193 at 4 (same argument made in response to Defendants' motion for summary judgment and supplemental briefing on summary judgment). Local Rule 56.1(b) requires that "[t]he moving party must file with the motion a written memorandum containing a short, concise statement of the reasons in support of the motion with a list of authorities relied upon." Plaintiff reads this rule as requiring a table of authorities, which Defendants did not include in their pending motions. This rule, however, is open to interpretation. On the one hand, Plaintiff's reading could be correct—that Rule 56.1(b) requires parties, in their opening briefs, to separately list all authorities relied on. On the other hand, consistent with the next sentence in Rule 56.1(b)—which only requires a party filing a response to include a "statement of the reasons in opposition to the motion with authorities—the rule does not specify a form for the list of authorities, such as a table. As such, a memorandum in support of a motion containing reasons and authorities relied on complies with the rule.

The Court need not resolve this issue to decide Plaintiff's motion. This is because, regardless of how the Court reads the above language, Defendants' failure to include a separate list of authorities does not prejudice Plaintiff such that striking the motion to dismiss and motion for summary judgment would be appropriate. At the hearing, Plaintiff indicated that the lack of a separate list of authorities prejudiced her because she was forced to sort through Defendants' briefs to pull out authorities to look up. However, Plaintiff does not argue, and could not credibly argue, that she would not have read Defendants' entire briefs anyway, as she could only learn what arguments Defendants were making by reading the briefs Defendants filed. I therefore recommend denying Plaintiff's motion to strike.

Next, Plaintiff argues that the Court should strike Defendants' motion for reconsideration as untimely. Doc. 183. at 2; *see also* Doc. 172 at 6 (raising the same issue in response to Defendants' motion for summary judgment). Plaintiff fails to develop this argument in her motion to strike. Instead, the parties discussed this issue in briefing the motion for reconsideration. *See* Docs. 174, 178. Because the issue is more fully developed in the briefing on the motion for reconsideration, I will address it below in connection with that motion.

### 3. Defendants' Motion for Reconsideration (Doc. 169)

When briefing their original summary judgment motion, Defendants filed a Motion to Exclude from Summary Judgment Consideration, seeking to exclude certain exhibits used by Plaintiff in her response to summary judgment. Doc. 100. In my April 2020 PFRD addressing Defendants' prior motion for summary judgment, I recommended denying the motion to exclude as moot because none of the exhibits were material to resolving the summary judgment motion. Doc. 110. The Court adopted this recommendation. Doc. 119. Because the Tenth Circuit reversed and remanded certain claims, Defendants now seek reconsideration of their motion to

exclude, arguing that is it no longer moot. Doc. 169. I agree that the Tenth Circuit remand order requires this Court to reexamine its earlier ruling and consider whether the motion to exclude continues to be moot. *See* Fed. R. Civ. P. 60(b)(5) (listing grounds for relief from judgment including that "it is based on an earlier judgment that has been reversed or vacated").

In the original motion, Defendants sought to exclude an "unverified and possibly altered letter" from Plaintiff to Ms. Hoppman, an affidavit of Mitchell Neri, and a letter from Dr. Stephanie Tucker. Doc. 100 at 1. Defendants argued that Plaintiff failed to disclose those documents and witnesses in violation of Federal Rule of Civil Procedure 37(c), and as such the Court should exclude them from summary judgment consideration. In the present motion for reconsideration, Defendants argue that their motion to exclude is no longer moot because "Plaintiff may choose to use these improper exhibits again in the future. Indeed, Plaintiff recently utilized one of the concerning documents in response to Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment on Purported Retaliation Claim." Doc. 169 at 4. The document they reference is Plaintiff's letter to Ms. Hoppman. *See* Doc. 164 at 39 (citing Doc. 82-14 at 1). Defendants do not allege that Plaintiff has used the other exhibits (Mr. Neri's affidavit and Dr. Tucker's letter) in any pending motion and, having reviewed the pending motions myself, I found no reference to those exhibits.

I recommend finding that Defendants are only partially correct that their motion to exclude is no longer moot. In their motion to exclude, Defendants do not request to exclude information from trial but specifically request that certain exhibits be excluded from summary judgment consideration. Because Plaintiff does not use two of the exhibits in any pending motions, a request to exclude them from consideration is moot. That is, the motion to exclude is still moot as to Mr. Neri's affidavit and the letter and mention of Dr. Tucker because Plaintiff

does not attempt to introduce those exhibits in any pending motion. If Defendants believe Plaintiff will improperly use witnesses or exhibits at trial, they may file motions in limine in advance of trial or raise their objections at trial. I recommend that the Court not make an advisory ruling about trial exhibits that are not currently at issue. Regarding Plaintiff's letter to Ms. Hoppman that Plaintiff does cite, Doc. 164 at 39 (response to motion to dismiss), Defendants' request to exclude is not moot and so I recommend addressing the merits of Defendants' argument that this letter should be excluded. That is, I recommend reconsidering Defendants' motion to exclude as to that letter.

Plaintiff argues that the Court should decline Defendants' request to reconsider because their motion was untimely. Doc. 174 at 1. As discussed above, she also made this request in a separate motion. Doc. 183. Relevant to Plaintiff's untimeliness argument is some procedural history following the Tenth Circuit remand.

Following the Tenth Circuit remand, I held a status conference with the parties and subsequently set a briefing schedule for forthcoming motions. Doc. 142. I set a deadline of October 8, 2021 for Defendants to refile their motion to exclude, as well as to file any other dispositive motions. *Id.* Defendants missed this deadline and filed their motion for reconsideration on October 18, 2021. Doc. 169. Defendants, however, point out that they were unaware of the need to refile their motion to exclude until October 6, 2021 when Plaintiff included citations to her letter in her response to the motion to dismiss.[7] Doc. 178 (citing Plaintiff's response, Doc. 164). This explanation tracks with my analysis of the motion to reconsider: Defendants do not need to seek reconsideration to exclude exhibits Plaintiff is no

---

[7] Defendants argue that Plaintiff's October 6 response failed to follow the Court's briefing schedule. Doc. 178 at 1. I, however, find no fault in the timing of Plaintiff's filing because she sought and received extensions for her response. *See* Docs. 158, 163.

longer relying on in pending motions. The timing of their filing is reasonable, given that it is a response to Plaintiff introducing exhibits they seek to exclude.[8] As such, I recommend denying Plaintiff's request to deny or strike the motion for reconsideration as untimely. *See* Docs. 174, 183. Commensurately, I recommend granting Defendants' Motion for Reconsideration (Doc. 169) in part and reconsidering the motion to exclude (Doc. 100) as it relates to Plaintiff's letter to Ms. Hoppman.

### 4. Defendants' Motion to Exclude (Doc. 100)

Because I recommend granting Defendants' motion for reconsideration in part, I next will address the substance of their reconsideration request—Defendants' Motion to Exclude—as it relates to Plaintiff's letter to Ms. Hoppman. Doc. 100. The letter at issue is attached to Plaintiff's response to the prior summary judgment motion, Doc. 82-12 ("Exhibit 12") and Doc. 82-14 at 1 ("Exhibit 14 (page 1)").[9] Exhibit 12 and Exhibit 14 (page 1) are the same letter, except Plaintiff highlighted portions of Exhibit 14 (page 1). The exhibits are a letter dated April 26, 2016 from Plaintiff to Cindy Benefield (Defendant Cindy Hoppman's prior name), discussing the April 16, 2016 incident with Mr. Kegler. Defendants assert that this letter is different from the one Plaintiff produced in discovery. They attached the letter she produced in discovery as Exhibit C to their motion to exclude, with the differences highlighted. *See* Doc. 100-3. Plaintiff does not

---

[8] Plaintiff also points out that Defendants' motion for reconsideration fails to follow Local Rule 7.1(a) to include a recitation of whether the motion is opposed. While parties should always attempt to confer regarding motions before their filing, given that the motion to exclude was opposed, it was reasonable for Defendants to presume the motion for reconsideration also would be opposed.

[9] For clarity, Exhibit 14 (Doc. 82-14) is 12 pages in total. The first page is the letter at issue here—the letter Plaintiff sent to Ms. Hoppman. The remaining pages are emails Ms. Hoppman sent, hand written notes, and leave paperwork. In their motion to exclude, Defendants are only concerned with the first page of Exhibit 14.

dispute that the letters are different and explains that she accidently produced a draft of the letter in discovery and that Exhibits 12 and 14 (page 1) are copies of the letter she actually sent to Ms. Hoppman. Doc. 101 at 1-2.

Defendants move to strike the letter under Rule 37(c), arguing that because Plaintiff disclosed a different letter in discovery, Exhibits 12 and 14 (page 1) are undisclosed. Federal Rule of Procedure 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Rule 26(a)(1)(A)(ii) requires a party to provide to the other parties "a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Rule 26(e) requires timely supplements of disclosures made under Rule 26(a). Under these Rules, I agree with Defendants that Plaintiff should be prohibited from using Exhibits 12 and 14 (page 1) as evidence in a motion because that letter is different than the letter she disclosed according to Rule 26(a), unless her failure to disclose was substantially justified or is harmless.

In determining whether her failure to disclose was substantially justified or harmless under Rule 37(c), the Court should consider: (1) whether the other party will be prejudiced, (2) the ability to cure any prejudice, (3) whether allowing the evidence would disrupt the trial, and (4) the violator's bad faith or willfulness. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952-52 (10th Cir. 2002). Plaintiff argues that her failure to produce the final version of the letter in discovery was substantially justified or harmless because "the letter to Cindy dated April 26,

2016 was not altered, it was purely a mistake that a draft copy (which has 3 minute differences, nothing that changed the reason, information, nor meaning of anything in the letter) was produced instead of the copy sent to Cindy." Doc. 101 at 1-2. In other words, Plaintiff argues that the differences between the draft letter she produced in discovery and final copy of the letter she attached as exhibits are so small, Exhibits 12 and 14 (page 1) should not be excluded from consideration. Defendants, on the other hand, argue that Plaintiff has failed to authenticate either letter —i.e. she failed to produce the email she sent to Ms. Hoppman attaching the letter.

Looking at the four factors, first, Defendants are not prejudiced by Plaintiff's failure to disclose Exhibits 12 and 14 (page 1). That is, having reviewed the letter Plaintiff disclosed and those used in briefing, I agree with Plaintiff that there are no meaningful differences between Exhibits 12 and 14 (page 1) and the letter she disclosed. *Compare* Docs. 82-12 & 82-14 at 1 (letters used in briefing*), with* Doc. 100-3 (disclosed letter). The second factor—ability to cure prejudice—weighs in favor of a harmless finding since there is no, or very little, prejudice to be cured. Factors three and four also weigh in favor of finding the failure to disclose is substantially justified or harmless because a trial is not yet set, and so new evidence will not disrupt trial, and I find no evidence of bad faith or willfulness on Plaintiff's part. These factors, therefore, weigh in favor of finding Plaintiff's failure to disclose Exhibits 12 and 14 (page 1) is harmless.

Defendants' objection to the Exhibits 12 and 14 (page 1) seems to be less with disclosure of the letter and more about Plaintiff's failure to authenticate it—i.e., her failure to produce the email showing which letter she actually sent. But Defendants make no arguments regarding exclusion for failure to authenticate, and I recommend that the Court not make those arguments

for Defendants. As such, I recommend denying the motion to exclude (Doc. 100) as to Exhibits 12 and 14 (page 1).[10]

In addition to exclusion, Defendants request that the Court grant sanctions, including payment of reasonable attorney's fees caused by Plaintiff's failure to provide information during discovery. Doc. 100 at 1. Federal Rule of Civil Procedure 37(c)(1)(A) provides that in addition to, or instead of excluding undisclosed information, the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure." Given that I recommend denying the motion to exclude, I recommend denying Defendants' request for attorney's fees.

Plaintiff likewise requests that Defendants be sanctioned for the timing of their motion to exclude. As background, Plaintiff filed her response to the prior summary judgment motion (in which she attached the exhibits at issue in the motion to exclude) on October 8, 2019. Doc. 82. Defendants first sent a letter to Plaintiff regarding the contested exhibits on October 25, 2019. Doc. 100-4 at 2. Thereafter, I set in-person oral arguments on the motion for summary judgment for December 17, 2019. Doc. 95. Plaintiff then filed a motion for continuance, explaining that she would be in another state from November 28, 2019 to January 1, 2020. Doc. 94. Defendants sent another letter to Plaintiff on December 12, 2019 about the contested exhibits (Doc. 100-1), and then filed their motion to exclude on December 20, 2019, Doc. 100. Plaintiff asserts that Defendants waited until they knew she was unavailable to ask her for information and then filed their motion—conduct which she argues is sanctionable. Doc. 101 at 6. However, Defendants first sent a good faith letter to Plaintiff in October, well before she was out of town. Additionally,

---

[10] If the presiding judge disagrees with my recommendation and excludes Exhibits 12 and 14 (page 1), excluding the letter contained in these exhibits does not change my recommendation in connection with the motion where the letter is used—Plaintiff uses the letter in her response to Defendants' motion to dismiss (Doc. 164).

her request for continuance indicated that she would be out of town and unavailable for an in-person hearing, not that she would be unavailable for all correspondence. *See* Doc. 94. Lastly, Plaintiff does not explain what she would have done differently in response to the December letter that she did not have an opportunity to do in response to the October letter. In other words, Plaintiff does not show she suffered any prejudice by not being able to respond to Defendants' December 12 letter before Defendants filed their motion on December 20. For these reasons, I do not find Defendants' timing of their motion to be sanctionable and recommend denying Plaintiff's request for sanctions.

### 5. Plaintiff's Motion to Reinstate (Doc. 140)

In her motion to reinstate, Plaintiff seeks to reinstate all her federal ADA claims raised in her operative complaint. *See* Docs. 140 (motion); 144 (response); 146 (reply). While Plaintiff's motion focuses on claims for which the Tenth Circuit affirmed summary judgment (failure to accommodate, hostile work environment, and constructive discharge) and a claim the Tenth Circuit declined to address (record of impairment), she also discusses her claims the Tenth Circuit reversed and remanded (discrimination based on her perceived demotion). To clarify the status of her claims and address her motion to reinstate, I will address which claims the Tenth Circuit's reversal reinstated, which claims are no longer viable because the Tenth Circuit affirmed summary judgment, and which claims the Tenth Circuit did not consider other than directing the Court to give further consideration.

### a. Claims Reinstated Given the Tenth Circuit Mandate

In the April 2020 PFRD (as later adopted by the presiding judge), I recommended granting summary judgment in Defendants' favor on Plaintiff's federal claim for discrimination based on her transfer of position (demotion). To establish a prima facie case of disability

discrimination under the ADA, a plaintiff must prove that she "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer . . . because of that disability." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011). For element one, "[d]isability is defined by the ADA as '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" *Lanman v. Johnson County, Kansas*, 393 F.3d 1151, 1156 (10th Cir. 2004) (quoting 42 U.S.C. § 12102(2)). For element three, "a plaintiff must generally show that [s]he has suffered an adverse employment action because of the disability." *C.R. England, Inc.*, 644 F.3d at 1038.

I found that element two (whether Plaintiff was qualified to perform the essential functions of the job) was easily resolved in Plaintiff's favor because Defendants did not contest it. Looking at element one (whether Plaintiff is disabled) I found it to be a close call whether Plaintiff had an actual impairment or whether Defendants regarded her as having an impairment. Doc. 110 at 12-15. I did not consider whether Plaintiff had a record of impairment because the parties did not address it. *Id.* at 13. I ultimately did not resolve the question of disability under element one because I found that Plaintiff's claim for discrimination based on the position transfer failed under element three. *Id.* at 21-25. That is, I found she was unable to show she suffered an adverse action as a result of her disability. *Id.*

On appeal, as to element one, the Tenth Circuit found that Plaintiff was not able to establish the elements needed for an actual impairment, and so it affirmed the grant of summary judgment on claims based on actual impairment. *Neri v. Bd. of Educ. for the Albuquerque Pub. Schs.*, 860 F. App'x 556, 563 (10th Cir. 2021). It likewise declined to address whether Plaintiff

had a record of impairment because that issue was not adequately argued before the district court. *Id.* at 561 n.3. The court did, however, find a genuine issue of material fact as to whether Defendants regarded Plaintiff as disabled. *Id.* at 563-65. The court proceeded to examine element three and found "that a reasonable factfinder could conclude that the transfer was a demotion." *Id.* at 565. In sum, the Tenth Circuit reversed the grant of summary judgment and "remanded for further proceeding with regard to [Plaintiff's claim] of discrimination by being demoted because APS regarded her as being disabled." *Id.* at 569. As such, Plaintiff's claim for discrimination by being demoted because APS regarded her as being disabled is reinstated in this Court. *See Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003) ("[A] district court is bound to follow the mandate [from an appellant court], and the mandate controls all matters within its scope . . . ." (internal quotation marks and citation omitted)).

In addition to Plaintiff's federal claims under the ADA, she brought the same discrimination claims under the New Mexico Human Rights Act ("NMHRA"), over which the Court should exercise supplemental jurisdiction. New Mexico courts rely on federal ADA guidance in applying the NMHRA. *See Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004, ¶ 8, 41 P.3d 333 ("In interpreting our state Human Rights Act, we have previously indicated that it is appropriate to rely upon federal adjudication for guidance in analyzing a claim under the Act", and that the "closest federal counterpart would be the Americans with Disabilities Act."); *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 23, 91 P.3d 58 (New Mexico courts "may look at federal civil rights adjudication for guidance in interpreting the NMHRA"). Therefore, given the Tenth Circuit's conclusion that a reasonable trier of fact could conclude that Plaintiff was demoted and because the NMHRA tracks the ADA (a claim which the Tenth Circuit reinstated),

I recommend the Court reinstate Plaintiff's claim under the NMHRA that APS demoted her because it regarded her as being disabled.

   b.   Claims Dismissed on Summary Judgment and Affirmed by the Tenth Circuit

This Court granted summary judgment on Plaintiff's remaining federal claims, which the Tenth Circuit affirmed: "The district court is affirmed with regard to Mrs. Neri's allegations that APS discriminated against her because of an actual impairment, that she suffered a hostile work environment and a constructive discharge, and that APS failed to accommodate her PTSD." *Neri*, 860 F. App'x at 569. In her present motion to reinstate, Plaintiff moves to reinstate these federal claims, confusing them with the demotion claim that the Tenth Circuit reversed and remanded. In her motion to reinstate, Plaintiff repeats her allegations for these claims contained in the original summary judgment briefing—allegations that both this Court and the Tenth Circuit have considered and rejected. I recommend denying Plaintiff's request to reinstate those claims and instead following the Tenth Circuit's mandate, which affirmed summary judgment.[11] *See Procter & Gamble Co.*, 317 F.3d at 1126.

At the hearing, Plaintiff argued that this Court can consider her failure to accommodate claim because the Tenth Circuit dismissed it on a procedural error, not on the merits. That is, the Tenth Circuit affirmed summary judgment on Plaintiff's failure to accommodate claim because Plaintiff failed to address whether that claim was timely. *Neri*, 860 F. App'x at 568. Plaintiff cites no authority, and I am aware of none, that would allow this Court to consider the merits of a that claim following the Tenth Circuit order.[12]

_____

[11] I discuss Plaintiff's state-law claims for actual impairment, hostile work environment, and constructive discharge below when considering Defendants' motion for summary judgment on state-law claims.

[12] Because Plaintiff did not include a failure to accommodate claim in her complaint (she first alleged bringing such a claim at the January 16, 2020 hearing), it is unclear if she purports to

In her supplemental briefing on her retaliation claim, Plaintiff argues that the Tenth Circuit order regarding her claims for hostile work environment and constructive discharge were based on evidence "intentionally hidden and misrepresented by defendants." Doc. 166 at 6. She elaborates that the "[t]he Tenth Circuit along with this court [have] been misled to believe that Plaintiff cannot support any of her claims." *Id.* At the hearing, Plaintiff explained that she has now more evidence regarding her hostile work environment and constructive discharge claims that the Tenth Circuit did not consider and which this Court should now consider. However, the Tenth Circuit has already affirmed dismissal of those claims. A Tenth Circuit remand of other claims does not open her dismissed claims for further litigation.

Further, to the extent Plaintiff is seeking reconsideration from this Court, I recommend rejecting her request. A motion for reconsideration "may be construed in one of two ways: if filed within [28][13] days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment under Rule 59(e); if filed more than [28] days after entry of judgment, it is treated as a motion for relief from judgment under Rule 60(b)." *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002). Plaintiff filed her request well after 28 days since this Court entered its final judgment, and so she must show she is entitled to reconsideration based on one of the grounds for relief in Rule 60. *See* Fed. R. Civ. P. 60(b) (listing grounds for relief from judgment including mistake, inadvertence, surprise, or

---

assert that claim under the ADA or NMHRA. *See* Doc. 110 at 26 (April 2020 PFRD discussing failure to accommodate claim); *see generally* Doc. 38 (operative complaint). In my prior PFRD I only addressed the claim under the ADA, Doc. 110 at 26-27, which the Tenth Circuit affirmed. *Neri*, 860 F. App'x at 568. To the extent Plaintiff's failure to accommodate claim is alleged under the NMHRA, such a claim fails for the same reason as a federal claim: that she did not timely bring a claim for failure to accommodate. *Id.*

[13] After *Computerized Thermal Imagining* was published in 2002, the relevant time period under Rule 59(e) changed from 10 days to 28 days.

excusable neglect; newly discovery evidence; fraud, misrepresentation, or misconduct; the judgment is void; the judgment has been satisfied, released or discharged; or any other reason that justifies relief). Plaintiff points to no such grounds. Indeed, she does not explain what evidence she believes Defendants intentionally hid and misrepresented. Instead, she repeats her arguments that she was subjected to a hostile work environment forcing her constructive discharge—arguments that both this Court and the Tenth Circuit have already rejected.

Lastly, as discussed above, the Tenth Circuit declined to consider whether Plaintiff had established a record of impairment because she had not adequately argued that issue in the district court. *Neri*, 860 F. App'x at 561 n.3. In her present motion, Plaintiff asks to reinstate a claim that she has a record of impairment, which I recommend rejecting for two reasons.

First, Plaintiff presents no authority as to why this Court should consider her new argument raised for the first time after remand. Plaintiff disputes that it is the first time she raised this argument, pointing out that she attached medical records to her response to the original motion for summary judgment in order to show her record of impairment. I disagree. Attaching medical records without accompanying explanation or argument is not sufficient to raise the issue. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) ("Although we must liberally construe Defendant's pro se petition, we are not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." (internal citation omitted)).

Second, even assuming such attachments had been sufficient to notify the Court that Plaintiff was arguing she had a record of impairment, for the reasons explained by the Tenth Circuit, her argument fails on the merits under both the ADA and NMHRA. A record of impairment claim requires that "(1) the plaintiff has a record of, or has been misclassified as

having, (2) a recognized impairment that (3) the plaintiff 'actually suffered' and that (4) substantially limited (5) a major life activity." *Zwygart v. Bd. of Cnty. Comm'r of Jefferson Cnty, Kan.*, 483 F.3d 1086, 1091 (10th Cir. 2007); *Trujillo*, 2002-NMSC-004, ¶ 8 (relying on federal ADA guidance to interpret the NMHRA). In considering whether Plaintiff established an actual impairment, the Tenth Circuit considered whether Plaintiff could show an impairment that substantially limits one or more appropriate major life activities. *Neri*, 860 F. App'x at 562-63. It found she could not. *Id.* at 563. While she presented testimony from her therapist, Ms. Poteet, that she has been diagnosed with PTSD, she did not present any expert evidence to "link her PTSD diagnosis with her symptoms to establish that her PTSD substantially limits at least one major life activity." *Id.* To the contrary, Ms. Poteet testified at her deposition that the "only expert opinion she would offer is whether, in fact, Mrs. Neri has PTSD."[14] *Id.* at 562 (internal quotation marks omitted). Plaintiff's lack of expert medical evidence would also prove fatal to a record of impairment claim. That is, without the evidence to link her diagnosis and symptoms, she would not be able to establish that she has a record of an impairment that substantially limits a major life activity.

At the hearing, Plaintiff pointed to a number of documents in the record which she argues provide the missing link between her PTSD diagnosis and her symptoms to establish that her PTSD substantially limits at least one major life activity. For example, she cites Ms. Poteet's

---

[14] At the hearing, Plaintiff alleged Defendants failed to provide the Court with that the part of Ms. Poteet's deposition testimony that includes contrary evidence. Defendants confirmed that no contrary testimony was missing. Indeed, in their reply to the motion for summary judgment, Defendants attached the portion of Ms. Poteet's deposition in which she makes the statement at issue, as well as the following four pages of testimony in which she discusses her role in treating Plaintiff. Doc. 186-2. Nothing in that testimony indicates that Ms. Poteet would offer an expert opinion contrary to the opinion she explicitly said she would not offer and Plaintiff presents no such evidence to support her assertion.

deposition in which Ms. Poteet discusses certain symptoms Plaintiff suffers, Doc. 89-4 at 35:2 to
36:1, and letters Ms. Poteet wrote indicating that Plaintiff should take time off work because "her
emotions have been dysregulated," Doc. 1-1 at 34-35. Plaintiff also pointed to the 75 pages of
medical records she attached to prior briefing. Doc. 146-1. However, none of these documents
and records provide the link the Tenth Circuit found missing. That Ms. Poteet discussed
Plaintiff's PTSD symptoms is not the same as offering an expert opinion regarding limitations of
a major life activity. As such, I recommend rejecting her request to reinstate her claim for a
record of impairment under the ADA or the NMHRA.

          c.   Claims For This Court to Consider Further

      In the April 2020 PFRD, I briefly discussed whether Plaintiff properly brought a claim
for retaliation based on either taking FMLA leave or telling Defendant Hoppman that she has a
disability. Doc. 110 at 29. Ultimately, I did not resolve this matter because I found that even if
Plaintiff did bring such a claim, she could not establish a prima facie case for retaliation because
she did not suffer an adverse employment action due to her position transfer. *Id.* at 30; *see also*
*Foster v. Mountain Coal Co.*, 803 F.3d 1178, 1187 (10th Cir. 2016) (in order to establish a prima
facie case for retaliation under the ADA, a plaintiff must show "(1) that [s]he engaged in
protected activity; (2) [s]he was subjected to [an] adverse employment action subsequent to or
contemporaneous with the protected activity; and (3) there was a causal connection between the
protected activity and the adverse employment action").

      On appeal, the Tenth Circuit reiterated that Plaintiff had established a genuine issue of
material fact as to whether the transfer was a demotion (and therefore an adverse employment
action) and as such reversed in part this Court's grant of summary judgment. *Neri*, 860 F. App'x
at 568. However, the Tenth Circuit also directed that "[o]n remand, the district court may choose

to examine whether Mrs. Neri properly asserted a retaliation claim before conducting further proceedings on any such claim." *Id.*

Given the Tenth Circuit's directive, I set a briefing schedule regarding motions related to Plaintiff's retaliation claim. Doc. 142. In her motion to reinstate, Plaintiff asks to reinstate her retaliation claim and argues that she properly asserted such a claim, citing the standard for reviewing a motion to dismiss for failure to state a claim. Doc. 140 at 2-4. But Plaintiff also acknowledged that she planned to file a motion on that claim according to the briefing schedule. Doc. 146 at 4 ("Mrs. Neri's motion with reference to the Tenth Circuit 'vacate' and 'remand' of her retaliation claim is not her complete argument, and because of the decision made by Judge Yarbrough and defendants during the Status Conference on August 5, 2021, she will address this issue through a motion due on September 8, 2021."). Accordingly, Plaintiff filed supplemental briefing for her motion to reinstate, specifically directed at her retaliation claim (Doc. 153) and Defendants filed a motion to dismiss her retaliation claim (Doc. 154). Therefore, I will address the retaliation claim and Plaintiff's supplemental briefing below when discussing Defendants' motion to dismiss.

> d. Conclusion

Issues that need no further discussion are those on which the Tenth Circuit provided definitive direction. Namely, the Tenth Circuit affirmed this Court's dismissal of Plaintiff's federal claims of actual impairment, record of impairment, hostile work environment, constructive discharge, and failure to accommodate. Because these claims are no longer viable, I recommend denying Plaintiff's motion to reinstate (Doc. 140) these claims. Conversely, the Tenth Circuit concluded that Plaintiff's claim for discrimination based on demotion because APS

regarded Plaintiff as disabled presented genuine issues of material fact that could not be resolved on summary judgment. Accordingly, I recommend granting her motion as to this claim.

### 6. Motion to Dismiss Retaliation Claims (Docs. 153, 154)

In the April 2020 PFRD (as adopted by the Court), I noted an issue as to whether Plaintiff pleaded a claim for retaliation. Doc. 110 at 29. However, I did not address that issue, finding that even if she had alleged a retaliation claim, it would fail because she had not suffered an adverse action. *Id.* at 29-30. Because the Tenth Circuit found a genuine question of material fact as to whether Plaintiff's transfer was a demotion and therefore an adverse action, it remanded the retaliation issue, allowing this Court to decide whether Plaintiff properly asserted a retaliation claim. *Neri*, 860 F. App'x at 568. Accordingly, Defendants filed a "Motion to Dismiss or in the Alternative Motion for Summary Judgment on Purported Retaliation Claims." Doc. 154; *see also* Docs. 164, 170 (response and reply). For her part, Plaintiff filed a "Memorandum in Support of Her Motion to Reinstate Federal Discrimination Claims with Particular Reference to her Retaliation Claim." Doc. 153; *see also* Docs. 156, 166 (response and reply). I will address the arguments in both.

As an initial matter, Defendants assert that Plaintiff failed to allege a retaliation claim in her complaint and also failed to address it in the prior summary judgment briefing. Whether Plaintiff alleged a retaliation claim in her complaint is an issue I address below. That Plaintiff did not discuss an alleged retaliation claim in prior summary judgment briefing does not impact this analysis. Defendants, as the moving party, carried the initial burden on summary judgment. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993) ("The moving party bears the initial burden of showing that there is an absence of any issues of material fact."). If

Defendants failed to move for summary judgment on a claim in the complaint, it is not Plaintiff's

duty to discuss that issue in her response to summary judgment.

Thus, I turn to whether Plaintiff's operative complaint includes a retaliation claim. When

I asked Plaintiff at the January 16, 2020 hearing to describe any retaliation claims she is

bringing, she replied that APS retaliated against her because of her disability and/or because she

took leave under the Family and Medical Leave Act ("FMLA"). *See* Doc. 109 (clerk's minutes);

Recording at 10:21. I will thus examine Plaintiff's allegations of fact in her operative complaint

to determine if she stated a claim for FMLA retaliation or some other disability retaliation.

  a. <u>Legal Standard for Motion to Dismiss</u>

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure

to state a claim upon which the court can grant relief. "[T]o withstand a Rule 12(b)(6) motion to

dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to

relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir.

2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a complaint

does not require detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, it

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Twombly*, 550 U.S. at 555.

"A claim is facially plausible when the allegations give rise to a reasonable inference that

the defendant is liable." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). The court's

consideration, therefore, is limited to determining whether the complaint states a legally

sufficient claim upon which the court can grant relief. *See Sutton v. Utah State Sch. for the Deaf*

*& Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The court is not required to accept conclusions of

law or the asserted application of law to the alleged facts. *See Hackford v. Babbitt*, 14 F.3d 1457,

1465 (10th Cir. 1994). Nor is the court required to accept as true legal conclusions that are masquerading as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must, however, view a plaintiff's allegations in the light most favorable to him. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

When a plaintiff proceeds pro se, the court construes her pleadings liberally, holding them to a less stringent standard than those a party represented by counsel files. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In so doing, the court makes allowance for a pro se litigant's "failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements." *Id.* The court will not, however, construct arguments or search the record for the pro se party. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

   b.   FMLA Retaliation

Looking first at FMLA retaliation, under 29 U.S.C. § 2615(a)(2), it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by FMLA. The Tenth Circuit has "construed this provision of the FMLA as creating a retaliation theory of recovery." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1004 (10th Cir. 2011). If a plaintiff does not have direct proof of retaliation, her claim is subject to the burden-shifting analysis of *McDonnell Douglas*. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1318 (10th Cir. 2017). Under this analysis, Plaintiff bears the initial burden of establishing a prima facie case of retaliation by showing that: "(1) she engaged in a protected activity; (2) [Defendants] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006).

Temporal proximity between the protected activity and adverse action may be sufficient to establish a causal connection, depending on how close the two are. *Id.* The *McDonnell Douglas* analysis is an evidentiary standard, not a pleading standard; however, to determine if a plaintiff has alleged a plausible claim, the court should examine whether the plaintiff has alleged facts to state a plausible prima-facie case. *See Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 933-34 (10th Cir. 2015).[15]

"Alternatively, a plaintiff may proceed under a mixed motives theory and provide direct evidence of retaliation, although the Tenth Circuit Court of Appeals has questioned whether this approach is applicable in an FMLA retaliation claim." *Cordova v. New Mexico*, 283 F. Supp. 3d 1028, 1043 (D.N.M. 2017) (citing *Twigg*, 659 F.3d at 1004); *see also Debord v. Mercy Health Sys. of Kansas, Inc.*, 737 F.3d 642, 655 (10th Cir. 2013) (implying the direct/mixed motive theory applies in FMLA retaliation cases by its statement "[w]here, as here, the plaintiff does not have direct evidence of retaliation, we follow the three-step framework from *McDonnell Douglas Corp. v. Green*"). "[A] plaintiff proceeding under the direct/'mixed motives' approach must present direct or circumstantial evidence that directly shows that retaliation played a motivating part in the employment decision at issue." *Twigg*, 659 F.3d at 1004-05. "Evidence of discrimination, if believed, is only direct evidence if it proves the existence of a fact in issue without inference or presumption." *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 883 (10th Cir. 2018) (internal quotation marks and citation omitted). Indeed, "in the employment context, this type of evidence is usually impossible to obtain." *Ford v. Jackson Nat'l Life Ins.*

---

[15] I cite unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

*Co.*, No. 21-1126, 2022 WL 3589672, at *5 (10th Cir. Aug. 23, 2022) (internal quotation marks and citation omitted).

Looking at Plaintiff's form complaint, it includes a check-box list of discriminatory conduct for her to choose from, but she did not check the box for retaliation. Doc. 38 at 4-5. Citing *Shepherd v. Precision Drilling Co., L.P.,* No. CV 12-0351 WPL/CEG, 2013 WL 11865970, at *4 (D.N.M. Apr. 9, 2013), Defendants argue that Plaintiff's failure to check the "retaliation" box creates a presumption that she did not intend to bring a retaliation claim. Doc. 154 at 10. In *Shepherd*, this court examined whether the plaintiff had exhausted his administrative remedies for a retaliation claim when he failed to check the box for "retaliation" on his EEOC Charge of Discrimination. *Id.* at *4-5. The court held that "[w]hen the complaining party fails to check a particular box, there is a presumption that the complaining party is not asserting a claim represented by the unchecked boxes. However, this presumption may be overcome if the text detailing the allegations clearly sets forth the claim." *Id.* at *4 (citing *Gunnel v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998)). Assuming *Shepherd* and *Gunnel* apply to a complaint (and not just an EEOC Charge of Discrimination), I must examine the text of Plaintiff's complaint to determine if she detailed allegations of retaliation.

A different section of Plaintiff's form complaint provides a check-box list of reasons defendant discriminated against plaintiff. Under that section, Plaintiff checked the box for discrimination based on "disability or perceived disability." *Id.* at 6. She then elaborated, "Mental Health Disabilities: PTSD and Anxiety Disorder, which up until the time of plaintiff filing her complaint, was not in question. Along with retaliation for taking FMLA leave." *Id.* at 6-7. Nowhere else in the complaint does Plaintiff mention retaliation or her FMLA leave. Plaintiff's one conclusory sentence—"[a]long with retaliation for taking FMLA leave"—is

insufficient to state a plausible claim for FMLA retaliation. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). She provides no facts about her FMLA leave, such as when she took leave or what retaliatory action Defendants took against her following her leave, and therefore fails to allege that she engaged in protected activity or that there was a causal connection between her protected activity and an adverse action.

Plaintiff points to her prior complaints to argue that she did include allegations related to an FMLA retaliation claim. Doc. 164 at 25. I, however, have reviewed her prior complaints and find no further allegations regarding an FMLA retaliation claim. *See* Docs. 1-1, 12, 30. Further, even if her prior complaints contained such allegations, "[a]n amended complaint supersedes the original complaint and renders the original complaint of no legal effect." *Franklin v. Kansas Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005). The Court, therefore, should look only to her third amended complaint as the operative complaint and the allegations contained within it.

Plaintiff next argues that the attachments to her prior complaints were carried over to her operative complaint under Local Rule 10.7 and that one of the attachments support her claim for FMLA retaliation. Doc. 164 at 24. Local Rule 10.7 provides that "[a]n exhibit should be submitted only once and may later be referred to by document title and filing date." "In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001). I must therefore examine whether any of the attachments save Plaintiff's FMLA retaliation claim.

First, Plaintiff points to exhibits attached to her original complaint—two letters from her therapist, Billie Poteet—to argue that she has stated an FMLA retaliation claim. Doc. 164 at 39

34

(citing Doc. 1-1 at 34-35, Exhibits 6 and 7). I, however, find no reference to those exhibits in Plaintiff's operative complaint. And, even if those exhibits are referenced, they do not support her FMLA retaliation claim. The letters, dated April 27 and May 4, 2016, state that Plaintiff's PTSD had been triggered by "several incidences at her place of employment" and that Ms. Poteet suggested Plaintiff take a week off work, and then a second week. Doc. 1-1 at 35, 34. Plaintiff's one sentence that Defendants "retaliated against [her] for taking FMLA leave" along with a note from her therapist saying she should take time off work is not sufficient to state a prima facie case for FMLA retaliation. Taken together, those statements still fail to provide information such as when Plaintiff took FMLA leave and therefore fail to allege that there was a causal connection between her protected activity (FMLA leave) and the adverse action (demotion).

Next, in her operative complaint Plaintiff cites Exhibits A, B, and C (Doc. 38 at 7, 10), which correspond to exhibits attached to her first amended complaint (Docs. 12-1, 12-2, and 12-3). Of those exhibits, only Exhibit A makes any reference to Plaintiff's FMLA leave or retaliation. Doc. 12-1. Exhibit A is Plaintiff's EEOC Charge of Discrimination in which she explains, in part, that she took 10 days of FMLA leave due to her disability and that 2 weeks after she returned from leave, Ms. Hoppman informed Plaintiff about the demotion, stating "You have been out an excessive amount, due to the stress of the position, and we don't want to trigger your PTSD." Doc. 12-1 at 2. Said another way, Plaintiff alleges facts that state a prima facie case for retaliation by alleging she engaged in protected activity (taking FMLA leave), suffered an adverse action (the demotion), and that the two were close enough in time to establish a causal connection.[16]

---

[16] Plaintiff's allegations in Exhibit A do not allege direct evidence of FMLA retaliation because the statement "You have been out an excessive amount" requires at least one inference to link it

Weighing against a conclusion that Plaintiff provided sufficient notice of an FMLA retaliation claim is that Plaintiff does not repeat the allegations in Exhibit A in her operative complaint and that her reference to Exhibit A occurs in a section unrelated to a retaliation claim. Specifically, the one and only reference to Exhibit A that Plaintiff makes in her complaint is under the section "Exhaustion of Federal Administrative Remedies." Doc. 38 at 10. In other words, she attached Exhibit A to show that she exhausted her administrative remedies, not to provide facts related to retaliation.

Under these circumstances, Defendants' argument that Plaintiff's complaint did not put them on notice that she was bringing an FMLA retaliation claim has some force. Nonetheless, Plaintiff does clearly state in her complaint that Defendants retaliated against her for taking FMLA leave. Doc. 38 at 7. Even though this lone sentence provides insufficient allegations to state a claim, it does put Defendants on notice that Plaintiff is alleging FMLA retaliation. This notice, combined with Exhibit A, which is attached to the complaint, does state a plausible claim for FMLA retaliation. This is especially true given the liberal construction the court applies to pro se pleadings. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Thus, I recommend finding that Plaintiff has alleged a plausible prima facie case for FMLA retaliation under the *McDonnell Douglas* test. She alleges that she engaged in protected activity (taking FMLA leave), she suffered an adverse action (demotion), and there is a causal connection with temporal proximity between the two (two weeks after Plaintiff returned from FMLA leave, Ms. Hoppman told her about the demotion).

---

to Plaintiff's FMLA retaliation claim—that Plaintiff has been out an excessive amount due to her FMLA leave and not due to other, non-FMLA absences.

For these reasons, I recommend denying the portion of Defendants' motion to dismiss addressed to Plaintiff's claim for FMLA retaliation by demotion. I recognize that this decision, however, is a very close call. On the one hand, the Court must read pro se pleadings liberally. *Hall*, 935 F.2d at 1110. On the other hand, "the analysis is not whether I, having read [Plaintiff's] pleadings, can liberally construe a retaliation claim from the text of [Plaintiff's complaint]; the question is whether the [Defendants] would have been on notice of a claim of retaliation." *Shepherd*, 2013 WL 11865970, at *5. In any event, as discussed below, even if the Court agrees with me that Plaintiff has stated an FMLA retaliation claim, because Plaintiff can show no recoverable damages, I recommend granting summary judgment in Defendants' favor on that claim.

      c.   Disability Retaliation Under the ADA or NMHRA

To the extent Plaintiff is asserting Defendants retaliated against her because of her disability in violation of the ADA or the NMHRA, such claims require similar prima facie allegations. "To establish a prima facie case of ADA retaliation, a plaintiff must prove that (1) [she] engaged in a protected activity; (2) [she] was subjected to [an] adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there was a causal connection between the protected activity and the adverse employment action." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186–87 (10th Cir. 2016) (internal quotation marks and citation omitted); *see also Ulibarri v. State of NM Corr. Acad.*, 2006-NMSC-009, ¶ 16, 131 P.3d 43 (applying the same standard under the NMHRA). Plaintiff's operative complaint and all

referenced exhibits fail to provide any facts regarding any alleged protected activity[17] or a causal connection between a protected activity and an adverse employment action.

In her supplemental brief on retaliation, Plaintiff mentions for the first time that she was retaliated against for calling the EOS office on April 27, 2016 to complain about Ms. Hoppman failing to do anything about her PTSD being triggered. Doc. 153 at 10. But her operative complaint contains no allegations to make a prima facie case for such retaliation.

For these reasons, I recommend finding that Plaintiff has failed to state a plausible claim for disability retaliation under the ADA or NMHRA and therefore recommend granting Defendants' motion to dismiss these claims.

d. <u>Leave to Amend</u>

If the Court finds that Plaintiff has failed to state a retaliation claim, she requests leave to amend her complaint. Doc. 153 at 3; Doc. 164 at 7. Because I recommend granting the motion to dismiss as to any disability retaliation claim under the ADA or NMHRA, I will address Plaintiff's request for leave to amend.

Under Federal Rule of Civil Procedure 15(a)(2), once the time for amending a pleading as a matter of course has expired, a party may only amend "with the opposing party's written consent, or the court's leave." "The court should freely give leave when justice so requires." *Id.* However, if the deadline established by the court for amendments has expired, the movant must also establish good cause under Rule 16(b)(4) to amend the scheduling order. Fed. R. Civ. P.

---

[17] Plaintiff's Third Amended Complaint does make references to Plaintiff's "complaint" and Defendants failing to investigate her complaint. Doc. 38 at 8-9. In the context of the paragraph that contains those references and the next few paragraphs, the "complaint" appears to refer to her complaint to the EEOC for disability discrimination made *after* she alleges APS demoted her, not a complaint she made to Defendants which led to the demotion. *See id.* at 9 ¶ 7 ("APS had a mandatory responsibility to investigate my complaint sent to them the same day I filed my charge with the EEOC . . . .").

16(b)(4) (a scheduling order may be modified "only for good cause and with the judge's consent."); *see also Gorsuch Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240-41 (10th Cir. 2014). Indeed, this Court's Scheduling Order reminded the parties that

> Federal Rule of Civil Procedure 16 requires that the Court set a deadline for amendment of pleadings and joinder of parties. A party seeking to amend the pleadings after the above dates must both demonstrate good cause to amend the scheduling order as required by Federal Rule of Civil 16(b) and satisfy the requirements for amendment under Federal Rule of Civil Procedure 15(a).

Doc. 22 at 2 n.1 (citing *Gorsuch*, 771 F.3d at 1242).

The good cause standard requires the movant "to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Gorsuch*, 771 F.3d at 1240 (quotations omitted). In this way, "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch.*, No. CIV 02-1146 JB/LFG, 2007 WL 2296955, at *3 (D.N.M. June 5, 2007). Examples of good cause include "if a plaintiff learns new information through discovery or if the underlying law has changed." *Gorsuch*, 771 F.3d at 1240. If, however, "the plaintiff knew of the underlying conduct but simply failed to raise [the] claims, . . . the claims are barred." *Id.*

Here, I recommend finding that Plaintiff has not shown good cause to allow another amendment to her complaint. Her request to amend comes over two years after the deadline to amend passed on May 6, 2019 and after discovery closed on August 16, 2019. Doc. 22. True, the case was pending on appeal for ten months (from September 2020 to July 2021) (Docs. 135, 138), but even carving out that time, Plaintiff's request to amend comes too late. She presents no arguments to explain why she could not have brought her ADA or NMHRA retaliation claim

earlier and offers no explanation why the Court should allow a further amendment at such a late stage in the case.

     e.  <u>Conclusion</u>

For these reasons, I recommend finding that Plaintiff has stated a plausible claim for FMLA retaliation but has failed to state a plausible claim for disability retaliation under the ADA or NMHRA. As to the ADA and NMHRA disability retaliation claims she has failed to state, I recommend that the Court deny her request for leave to amend. I therefore recommend granting in part and denying in part Defendants' motion to dismiss (Doc. 154).

In their motion, Defendants move, in the alternative, for summary judgment on any retaliation claims. Because I recommend denying the motion to dismiss as to Plaintiff's FMLA retaliation claim, I will address their motion for summary judgment below as to the FMLA retaliation claim. Because I recommend granting Defendants' motion to dismiss as to the ADA and NMHRA disability retaliation claims, I recommend that the Court not address Defendants' alternative request for summary judgment on those disability retaliation claims.

**7.  Motions for Summary Judgment (Doc. 154, 168, 186)**

I next turn to Defendants' request for summary judgment on a number of Plaintiff's claims. First, if the Court declines to dismiss Plaintiff's FMLA retaliation claim for failure to state a claim, Defendants move in the alternative for summary judgment. Doc. 154. Therefore, I address whether the Court should grant summary judgment on Plaintiff's FMLA retaliation claim and conclude that the Court should because Plaintiff has no viable claim for FMLA retaliation damages.

Additionally, in her operative complaint, Plaintiff brings discrimination claims under both the federal ADA and the state NMHRA. In my April 2020 PFRD (as adopted by the Court),

I recommended dismissing all Plaintiff's federal claims and declining supplemental jurisdiction over her state-law claims. Doc. 110 at 30. Because the Tenth Circuit has remanded some federal claims and they are not subject to resolution before trial, the Court should not decline supplemental jurisdiction over the state-law claims. Given that the NMHRA is back in play, Defendants presently move for summary judgment on Plaintiff's claims for hostile work environment and constructive discharge under the NMHRA. *See* Docs. 168 (motion); 172 (response); 175 (reply). I also ordered supplemental briefing on Plaintiff's NMHRA claim for discrimination based on actual impairment. *See* Docs. 186 (supplement); 193 (response); 194 (reply). Having reviewed this briefing, I recommend that the Court rejected Plaintiff's claims under the NMHRA for the same reasons her parallel claims under the ADA fail.

Lastly, in the April 2020 PFRD I recommended that the Court not consider Defendants' motion for summary judgment as to damages because I recommended dismissing all her federal claims and remanding all her state claims. Doc. 110 at 33. Because the Tenth Circuit has reinstated one of her federal claims, Defendants again move for summary judgment on damages. Doc. 168. Below, I describe which of Plaintiff's claims for damages are viable and which are not.

a.   Legal Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if

under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

But, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. When "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is "entitled to a judgment as a matter of law." *Id.* at 323. Therefore, "a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The movant may show an entitlement to summary judgment "simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.*

b.   Undisputed Material Facts

In their briefs on both summary judgment motions, the parties present undisputed

material facts, which I review with a few rules in mind. First, facts not specifically controverted

will be deemed undisputed. *See* D.N.M. LR-Civ. 56.1(b). Additionally, facts without supporting

citations to the record will not be considered undisputed material facts. *See* Fed. R. Civ. P.

56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other

materials . . . ."); D.N.M. LR-Civ. 56.1(b) ("The response may set forth additional facts other

than those which respond to the Memorandum which the non-movant contends are material to

the resolution of the motion. Each additional fact must be lettered and must refer *with

particularity to those portions of the record upon which the non-movant relies*." (emphasis

added)). To that end, Plaintiff included a number of additional material facts in her response

brief without citations to the record that I recommend not considering in determining summary

judgment. *See* Doc. 172 at 28 ¶¶ A-1, B-2, E-5. The uncontroverted and supported material facts,

taken in the light most favorable to Plaintiff, are as follows:

From 2013 to 2016 Plaintiff worked for APS as an Individualized Education Program

("IEP") teacher at Atrisco Heritage Academy ("AHA"). Doc. 168 at 2 ¶ 5; Doc. 172 at 9 ¶ 5;

Doc. 154 at 2 ¶ 4; Doc. 164 at 9 ¶  3. Cynthia "Cindy" Hoppman (formerly Cynthia Benefield)

was Plaintiff's supervisor at AHA. Doc. 168 at 2 ¶ 6; Doc. 172 at 10 ¶ 6; Doc. 154 at 2 ¶ 5; Doc.

164 at 9.

Around April 25, 2016, following the April 14 incident with Mr. Kegler and Plaintiff's subsequent interactions with Ms. Hoppman, Plaintiff took 10 days of FMLA leave. Doc. 154-2 at 119:12 to 120:2 (Plf. Depo.); Doc. 154 at 4 ¶ 19; Doc. 164 at 13 ¶  13. She returned to work on May 11, 2011. Doc. 154-2 at 120:1-5 (Plf. Depo.); Doc. 154 at 4 ¶ 20; Doc. 164 at 13 ¶ 14. Plaintiff had her year-end evaluation with Ms. Hoppman on May 23, 2016. Doc. 168 at 2 ¶ 7; Doc. 172 at 10 ¶ 7; Doc. 154 at 4 ¶ 21; Doc. 164 at 8. During the elevation, Plaintiff and Ms. Hoppman discussed Plaintiff's self-evaluation form ("PDP"), which reflected that Plaintiff was overwhelmed, had quite a few late IEPs, failed to meet deadlines, and was behind on a project. Doc. 154-2 at 210:6 to 213:16 (Plf. Depo); Doc. 154 at 4 ¶ 22; Doc. 164 at 13-14 ¶ 15.

After the evaluation, Ms. Hoppman told Plaintiff that she would be assigned to a special education math teacher position at AHA for the 2016-2017 school year. Doc. 168 at 2 ¶ 8; Doc. 172 at 10 ¶ 8; Doc. 154 at 4 ¶ 23; Doc. 164 at 8. Plaintiff testified in her deposition that there had been a need for a special education math teacher for the last two years and that she had a lot of experience at such a job, but that she felt it was a demotion. Doc. 168-2 at 136:7-25 (Plf. Depo.); *see also* Doc. 168 at 2 ¶ 9; Doc. 172 at 11 ¶ 9; Doc. 154 at 4 ¶ 24; Doc. 164 at 14 ¶ 16. Ms. Hoppman, however, did not view the transfer as a demotion. Doc. 168 at 2 ¶ 10; Doc. 172 at 12 ¶ 10; Doc. 154 at 5 ¶ 25; Doc. 164 at 14 ¶ 17. Plaintiff would have received the same salary and medical and dental benefits as a special education math teacher as she received as the IEP teacher. Doc. 168-2 at 71:11-17 (Plf. Depo.); *see also* Doc. 168 at 2 ¶ 11; Doc. 172 at 12-13 ¶ 11; Doc. 154 at 5 ¶ 26; Doc. 164 at 15-16 ¶ 18. The day after their meeting, Ms. Hoppman sent Plaintiff a letter summarizing her stated reasons for the transfer, including missed and rescheduled IEPs, missed deadlines, Plaintiff's failure to respond to emails, and poor attendance, including excessive absences during the second semester. Doc. 82-14 at 2-3.

On May 16, 2016, one week before Plaintiff learned that Ms. Hoppman intended to transfer her, Plaintiff told her therapist that she planned to transfer schools at the end of the year because Ms. Hoppman had betrayed her trust. Doc. 168-2 at 175:22 to 177:25 (Plf. Depo.); *see also* Doc. 168 at 3 ¶ 13; Doc. 172 at 14 ¶ 13. Plaintiff testified that at the time she made such statements to her therapist, she had not looked for other available jobs with APS or identified any other available IEP teacher positions. Doc. 168 at 3 ¶ 14; Doc. 172 at 14-15 ¶ 14.

After the end of the 2016 school year, Plaintiff took a year's leave of absence, which she testified was for the purpose of determining if she could return to APS. Doc. 168-2 at 139:5-22 (Plf. Depo.). During her leave of absence, Plaintiff did not look for other jobs. Doc. 168 at 3 ¶ 15; Doc. 172 at 14 ¶ 15. When Plaintiff finally resigned from APS on March 9, 2017, AHA Principal Antonio Gonzales told her that she "always had a home as long as he was there." Doc. 168 at 3 ¶ 16; Doc. 172 at 15-16 ¶ 16. Following her resignation, Plaintiff never contacted Dr. Gonzales regarding available jobs with APS. Doc. 168 at 3 ¶ 17; Doc. 172 at 16 ¶ 17. Instead, she testified that during that time "we were still making a six-figure salary in my house" so she did not have to work. Doc. 168-2 at 147:21 to 148:4; 232:8-17 (Plf. Depo.); *see also* Doc. 168 at 3 ¶¶ 17, 22; Doc. 172 at 16, 20 ¶¶ 17, 22.

Since her resignation in March 2017, Plaintiff has not applied for any jobs with any public schools in New Mexico. Doc. 168 at 3 ¶ 18; Doc. 172 at 16 ¶ 18. Between May 23, 2016 and the present, Plaintiff applied to at least six out-of-state jobs. Doc. 168 at 3 ¶ 19; Doc. 172 at 17-18 ¶ 19. At her deposition, she could not remember more than six applications (Doc. 168-2 at 249:4-11), but in response to summary judgment Plaintiff attached screen shots of applications to the Austin and Houston Independent School Districts (Doc. 172-6). At least two of the jobs Plaintiff applied for were in higher education for which Plaintiff testified she had no experience.

Doc. 168 at 3 ¶ 20; Doc. 172 at 18-19 ¶ 20. Plaintiff testified that all her job applications

occurred shortly after her resignation in 2017. Doc. 168 at 3 ¶ 21; Doc. 172 at 19-20 ¶ 21. She

further testified that her teaching license expired in 2018 because she could not pay to renew it

and that she did not apply to any jobs in 2019. Doc. 168-2 at 41:1-23 (Plf. Depo.); *see also* Doc.

168 at 3 ¶ 21; Doc. 172 at 19-20 ¶ 21.

Plaintiff has no plans to return to work as a teacher. Doc. 168 at 4 ¶ 25; Doc. 172 at 22 ¶

25. Instead, she started her own business transferring images onto fabric and other items. Doc.

168 at 4 ¶ 23; Doc. 172 at 20 ¶ 23. As of her deposition in 2019, Plaintiff had not made any

money off her business. Doc. 168-2 at 233:2-4 (Plf. Depo.); *see also* Doc. 168 at 4 ¶ 24; Doc.

172 at 21 ¶ 24. Plaintiff also testified that she feels this lawsuit is a full time job. Doc. 168-2 at

21:5-9 (Plf. Depo.); *see also* Doc. 168 at 4 ¶ 24; Doc. 172 at 21 ¶ 24.

At her deposition, Plaintiff stated the damages she seeks are as follows: (1) 40 months of

back pay (Doc. 168-2 at 226:6 to 231:2 (Plf. Depo.); *see also* Doc. 168 at 4 ¶ 27; Doc. 172 at 23

¶ 27 (Plaintiff's response, stating she now seeks 66 months of backpay)); (2) 48 months of front

pay, based on "four years of getting a new education", during which time she hopes to go to law

school (Doc. 168-2 at 231:12 to 232:4 (Plf. Depo.); *see also* Doc. 168 at 4 ¶ 28; Doc. 172 at 23-

24 ¶ 28); (3) compensatory damages in the amount of $175,000 for the cost of paying off auto

loans and moving to Elephant Butte (Doc. 168-2 at 233:10 to 236:10 (Plf. Depo.); *see also* Doc.

168 at 4 ¶ 29; Doc. 172 at 24-26 ¶ 29); (4) future pecuniary losses in the amount of $521,060

(Doc. 168-2 at 236:16 to 238:5 (Plf. Depo.); *see also* Doc. 168 at 4 ¶ 29; Doc. 172 at 24-26 ¶

29); and (5) $1.7 million for emotional pain, suffering, mental anguish, loss of enjoyment of life,

and inconvenience (Doc. 168-2 at 238:22 to 240:3 (Plf. Depo.); *see also* Doc. 168 at 4 ¶ 29; Doc.

172 at 24-26 ¶ 2). Plaintiff testified that part of her claims for emotional pain, suffering, mental

anguish, and loss of enjoyment of life are based on the stress of pursuing this lawsuit. Doc. 168-2 at 238:22 to 240:3 (Plf. Depo.); *see also* Doc. 168 at 4 ¶ 31; Doc. 172 at 27-28 ¶ 31. However, Plaintiff also asserts, and Defendants dispute, that the actions of APS and Ms. Hoppman caused Plaintiff's "downward spiral." Doc. 172-1 ¶ 47 (Plf. Aff.).

On May 28, 2020, this Court entered a final order granting summary judgment in Defendants' favor as to all Plaintiff's federal claims and remanded her state claims to state court. Doc. 168 at 1 ¶ 1; Doc. 172 at 8 ¶ 1; Doc. 186 at 1 ¶ 1; Doc. 193 at 1 ¶ 1. In particular, Plaintiff's operative complaint alleged claims that Ms. Hoppman's conduct during the 2015-2016 school year created a hostile work environment and forced a constructive discharge. Doc. 168 at 4 ¶ 26; Doc. 172 at 22-23 ¶ 26. The Court granted summary judgment in Defendants' favor as to the claims for hostile work environment and constructive discharge under the federal ADA. Doc. 110 (as adopted by Doc. 119). The Tenth Circuit affirmed that judgment as to Plaintiff's federal hostile work environment and constructive discharge claims. Doc. 168 at 2 ¶ 3; Doc. 172 at 9 ¶ 3.

Additionally, the Tenth Circuit affirmed summary judgment on Plaintiff's claim based on actual impartment under the ADA. Doc. 186 at 2 ¶ 5; Doc. 193 at 11-13 ¶ 5. Plaintiff designated her therapist Billie Poteet as her only expert witness. Doc. 186 at 1 ¶ 2. During Ms. Poteet's deposition, she testified that she will offer an opinion that Plaintiff has PTSD, but that she would not offer any other expert opinions such as whether Plaintiff is disabled pursuant to the ADA or NMHRA. Doc. 186-2 at 12:20 to 13:5, 14:14 to 15:16 (Poteet Depo.); Doc. 186 at 2 ¶¶ 3-4; Doc. 193 at 8-10 ¶¶ 3-4.[18] Considering this evidence, the Tenth Circuit found that Plaintiff had

---

[18] To dispute this testimony, Plaintiff attached letters Ms. Poteet wrote to Plaintiff's employer, explaining that Plaintiff's "PTSD has been triggered by several instances at her place of employment," and as such "her emotions have been dysregulated and she is unable to attend to

"provided sufficient evidence that she has been diagnosed with PTSD" but that she had not pointed to "any opinion by Ms. Poteet linking any of her alleged limitations to her PTSD." *Neri*, 860 F. App'x at 562; Doc. 186 at 2 ¶ 5; Doc. 193 at 11-13 ¶ 5. It held that "[b]ecause Mrs. Neri did not present medical evidence to link her PTSD diagnosis with her symptoms to establish that her PTSD substantially limits at least one major life activity, we affirm the grant of summary judgment on claims based on the actual impairment definition of 'disability' under the ADA." *Neri*, 860 F. App'x at 563; Doc. 186 at 2 ¶ 5; Doc. 193 at 11-13 ¶ 5.

  c. <u>Procedural Issues</u>

  As an initial matter, in her response briefs, Plaintiff argues that the Court should deny summary judgment because Defendants violated a number of this District's local rules. Doc. 172 at 6; Doc. 193 at 4. First, she argues the Court should deny the motion for summary judgment because Defendants' briefing failed to comply with Local Rule 56.1, which Plaintiff reads as requiring a table of authorities. As discussed above in considering Plaintiff's motion to strike, even if Local Rule 56.1(b) requires a separate list of authorities, Defendants' failure to include one in their motion did not prejudice Plaintiff.

  Next, Plaintiff takes issue with Defendants' motion for reconsideration, which they filed after the deadline set by the Court. *See* Docs. 142, 169. I also discuss the timeliness of that motion above when considering the motion for reconsideration and so will not repeat that analysis here. Lastly, Plaintiff argues that Defendants filed their response to her motion to recuse after the deadline to do so. Doc. 172 at 5-6. Indeed, Defendants filed their response two days

---

the requirements of work." Doc. 193-1. These letters, Plaintiff argues, shows that Ms. Poteet did link Plaintiff's PTSD to her limitations. Doc. 193 at 9. However, these letters only show that Ms. Poteet suggested Plaintiff take time off of work and do not controvert Ms. Poteet's deposition testimony that she would offer no expert opinions, other than the opinion that Plaintiff has PTSD. *See* Doc. 193-1 (letters); Doc. 186-2 at 13:2-5 (Poteet Depo.).

late. *See* Docs. 149, 155; *see also* D.N.M. LR-Civ. 7.4(a) ("A response must be served and filed within fourteen (14) calendar days after service of the motion."). This delay, however, in no way impacts the present summary judgment motions and the Court has already ruled on the motion to recuse.

Defendants also raise a procedural issue. In their reply briefs, Defendants argue that Plaintiff failed to respond to their legal arguments, which constitutes waiver and consent to grant the motions for summary judgment. Doc. 170 at 12; 175 at 10; Doc. 194 at 6. Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Tenth Circuit has explained, the burden is on the moving party and "the burden on the nonmovant to respond arises only if the summary judgment motion is properly 'supported' as required by Rule 56(c)." *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002). "If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Id.* at 1194-95. Accordingly, the Court cannot grant summary judgment simply because Plaintiff failed to address Defendants' arguments, as Defendants assert.

For these reasons, I recommend declining to deny or grant summary judgment based on the procedural issued raised by the parties and proceed to address the motions on their merits.

d.  FMLA Retaliation

Defendants first argue that Plaintiff's retaliation claim fails because she has not exhausted her administrative remedies.[19] Doc. 154 at 9. They appear to be making this argument only in reference to potential disability retaliation claims (which I recommend dismissing for failure to state a claim). Indeed, "[t]here is no administrative exhaustion requirement for bringing a FMLA claim." *Ramsey v. Advance Stores Co.*, No. 15-4854-RDR, 2015 WL 3948119, at *5 (D. Kan. June 29, 2015). Therefore, to the extent Defendants argue that Plaintiff has failed to exhaust her FMLA retaliation claim, I recommend rejecting this argument.

Turning to the merits of Plaintiff's FMLA retaliation claim, as discussed above, "[a] plaintiff may proceed under a mixed motives theory and provide direct evidence of retaliation, although the Tenth Circuit Court of Appeals has questioned whether this approach is applicable in an FMLA retaliation claim." *Cordova v. New Mexico*, 283 F. Supp. 3d 1028, 1043 (D.N.M. 2017) (citing *Twigg*, 659 F.3d at 1004); *see also Debord v. Mercy Health Sys. of Kansas, Inc.*, 737 F.3d 642, 655 (10th Cir. 2013) (implying the direct/mixed motive theory applies in FMLA retaliation cases by its statement "[w]here, as here, the plaintiff does not have direct evidence of retaliation, we follow the three-step framework from *McDonnell Douglas Corp. v. Green*"). "[A] plaintiff proceeding under the direct/'mixed motives' approach must present direct or circumstantial evidence that directly shows that retaliation played a motivating part in the employment decision at issue." *Twigg*, 659 F.3d at 1004-05. "Evidence of discrimination, if

---

[19] In their answer to Plaintiff's third amended complaint, Defendants include an affirmative defense that she failed to exhaust her administrative remedies. Doc. 41 at 4. In her response to the motion to dismiss, Plaintiff "moves this court to strike Defendants' Failure to Exhaust Administrative Remedies Third Affirmative Defense." Doc. 164 at 26. Plaintiff provides no other argument and, therefore, her request is not properly briefed. As such, the argument is not properly before the Court and the Court should not consider it.

believed, is only direct evidence if it proves the existence of a fact in issue without inference or presumption." *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 883 (10th Cir. 2018) (internal quotation marks and citations omitted). Indeed, "in the employment context, this type of evidence is usually impossible to obtain." *Ford v. Jackson Nat'l Life Ins. Co.*, No. 21-1126, 2022 WL 3589672, at *5 (10th Cir. Aug. 23, 2022) (internal quotation marks and citation omitted).

Alternatively, if a plaintiff does not have direct proof of retaliation, her claim is subject to the burden-shifting analysis of *McDonnell Douglas*. *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1318 (10th Cir. 2017). Under this analysis, Plaintiff bears the initial burden of establishing a prima facie case of retaliation by showing that: "(1) she engaged in a protected activity; (2) [Defendants] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006). Temporal proximity between the protected activity and adverse action may be sufficient to establish a causal connection, depending on how close the two are. *Id.* If the plaintiff establishes a prima facie case for retaliation, "then the defendant must offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Id.* at 1170 (internal quotation marks and citation omitted).

Defendants analyze Plaintiff's FMLA retaliation claim under the *McDonnell Douglas* test (used when direct evidence of discrimination does not exist) and I will do the same. Defendants do not dispute the first two elements for a prima facie case: that Plaintiff engaged in protected activity (FMLA leave) and that they took an action that a reasonable employee would have found

materially adverse (the demotion).[20] Instead, Defendants focus on the last element: whether there exists a causal connection between the protected activity and the adverse action. Doc. 154 at 12. Looking at the material facts related to causal connection, I recommend finding there is a genuine issue of material fact regarding the causal connection between Plaintiff's FMLA leave and the demotion. Plaintiff took FMLA leave from April 25, 2016 to May 10, 2016. She returned to work on May 11, 2016 and had her year-end evaluation with Ms. Hoppman on May 23, 2016, during which time Ms. Hoppman told her about the alleged demotion. The closeness of these events "give[s] rise to an inference of unlawful discrimination." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (finding a termination that occurred between 4 and 6 weeks after protected activity was "very closely connected in time").

When confronted with this temporal proximity, Defendants argue that Plaintiff "was transferred to the math teacher position for performance-based reasons and because there was a need at AHA for a special education math teacher." Doc. 154 at 12. In other words, although framing their argument as an attack on Plaintiff's burden to establish a prima facie case, Defendants move on to step two of the *McDonnell Douglas* test—offering a legitimate, non-retaliatory reason for the employment action. *See Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1319 (10th Cir. 2017) ("Once the plaintiff successfully asserts a prima facie retaliation case, the burden shifts to the defendant to offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." (internal quotation marks and citation omitted)). To the extent the

---

[20] To be clear, Defendants do not concede that the position transfer/demotion was a materially adverse action. But because the Tenth Circuit previously found that a genuine issue of material facts exists as to whether the transfer was an adverse action, they do not move for summary judgment on that element. Doc. 154 at 12.

Court interprets Defendants' argument as asserting that Plaintiff has failed to present evidence of a pretextual motive (as opposed to interpreting Defendants' argument as asserting that Plaintiff has failed to make a prima facie case), I recommend that the Court reject Defendants' argument.

To show that Defendants had a legitimate, non-retaliatory reason for the alleged demotion, Defendants point to "performance-based reasons and because there was a need at AHA for a special education math teacher." Doc. 154 at 12. Indeed, during Plaintiff's evaluation, Plaintiff and Ms. Hoppman discussed Plaintiff's self-evaluation form ("PDP"), which reflected that Plaintiff was overwhelmed, had quite a few late IEPs, failed to meet deadlines, and was behind on a project. Doc. 154-2 at 210:6 to 213:16 (Plf. Depo); Doc. 154 at 4 ¶ 22; Doc. 164 at 13-14 ¶ 15. Plaintiff also testified at her deposition that there had been a need for a special education math teacher for the last two years and that she had a lot of experience at such a job. Doc. 168-2 at 136:7-25 (Plf. Depo.); *see also* Doc. 168 at 2 ¶ 9; Doc. 172 at 11 ¶ 9; Doc. 154 at 4 ¶ 24; Doc. 164 at 14 ¶ 16.

To meet her burden of showing that these reasons are pretextual, Plaintiff argues that Ms. Hoppman referenced excessive absences after Plaintiff's FMLA leave as a reason for the transfer.[21] Doc. 164 at 23. Plaintiff cites an email that Ms. Hoppman sent her on May 24, 2016 (the day after Plaintiff's evaluation in which Ms. Hoppman told her about the transfer and 13 days after she returned from FMLA leave). *Id.* (citing 82-14 at 2). In that May 24 email, Ms.

_____

[21] As discussed above, Plaintiff included the allegation about excessive absences in an exhibit to her complaint. *See* Doc. 12-1. That allegation is just that—an allegation and not evidence in the summary judgment record. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."). For this summary judgment motion, the Court will thus not rely on that allegation, but look at materials in the record.

Hoppman lists the reasons for Plaintiff's transfer, including "excessive absences [that] continued putting several staff members in difficult situations." Doc. 82-14 at 2. It is undisputed that from April 25 to May 11, 2016 Plaintiff was on FMLA leave. Viewing this evidence in the light most favorable to Plaintiff, an issue of material fact exists as to whether the excesses absences to which Ms. Hoppman referred were absences due to FMLA, meaning Defendants demoted Plaintiff in retaliation for taking FMLA leave and their proffered, non-retaliation reasons are pretextual. Thus, applying the *McDonnell Douglas* test, Plaintiff gets past summary judgment even if the Court interprets Defendants' argument as an attack on Plaintiff's pretext evidence.[22]

This is not the end of the analysis, however. The Court must still consider whether Plaintiff can show any redressable damages in connection with her FMLA retaliation claim. *See* Doc. 154 at 14 (Defendants move for summary judgment on Plaintiff's FMLA retaliation claim based on the argument that she is not entitled to any damages under such a claim).

Damages under the FMLA are limited to

**(A)** for damages equal to--
**(i)** the amount of--
**(I)** any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
**(II)** in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee;
…
**(B)** for such equitable relief as may be appropriate, including employment, reinstatement, and promotion

---

[22] As mentioned above, the parties brief this issue under *McDonell Douglas* and do not discuss whether Plaintiff has direct evidence of FMLA retaliation. To the extent the Court wishes to examine direct evidence, I recommend concluding that Plaintiff has presented no direct evidence because Ms. Hoppman's statement in her email regarding excessive absences requires an inference—that Plaintiff's excessive absences, which caused Defendants to demote her, were due to her FMLA leave (and not due to non-FMLA absences).

29 U.S.C. § 2617(a)(1). As a starting point, Plaintiff does not request equitable relief. *See* Doc. 38 at 11 (complaint listing damages sought). As a result, only section (A) above applies to Plaintiff's FMLA retaliation claim.

Under this section, Defendants argue that Plaintiff is not entitled to any damages in the difference in pay or benefits because "there was no change in salary or medical and dental benefits between the two positions." Doc. 154 at 15. Indeed, Plaintiff's FMLA retaliation claim is premised on the allegation that after she took FMLA leave, Defendants discriminated against her by demoting her to the special education math position. And is it undisputed that Plaintiff would have received the same salary and medical benefits between the two positions. Doc. 154 at 5 ¶ 26; Doc. 164 at 15-16 ¶ 18.

At her deposition, Plaintiff did testify that there was a difference in the amount of paid leave between the two positions. Doc. 168-2 at 71:18-20; *see also* Doc. 172 at 13-14 ¶ 11 (Plaintiff's argument). When pressed to explain the difference, however, she stated that the difference had to do with compensatory time but that during her last year as the IEP teacher she was not allowed to use any compensatory time. Doc. 168-2 at 71:18-73:21; *see also* Doc. 164-4 ¶ 16 (Plaintiff's affidavit, stating the same). In her response to summary judgment, she provides no other information such as what compensatory time the IEP teacher position received compared to the compensatory time the math teacher position received. Thus, I recommend finding that Plaintiff has not created a genuine issue of fact. *See Becker*, 709 F.3d at 1022 (10th Cir. 2013) (holding that a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way") (internal quotation marks omitted).

Plaintiff also argues that had she stayed in the IEP teacher position she "would have received a higher pay." Doc. 164 at 15 ¶ 18. To support this argument, she points to evidence

that the person who followed her in the IEP teacher position is now called the "relief head teacher." *Id.* (citing Doc. 82-1 at 1). But the "evidence" she points to is an email from defense counsel which states, "David Adviento-Mackey replaced Sheleeha Ballard in October, 2018 as Special Education: Department Head. Steve Heredia is replacing David Adviento-Mackey effective August 5, 2019 as Special Education: Release Head Teacher." Doc. 82-1. This email does not show that Plaintiff would have received a higher pay as it does not even state what the "release head teacher" makes. I therefore recommend finding that Plaintiff has failed to show a dispute of material fact regarding the pay and compensation between the two jobs and that the undisputed facts show that Plaintiff would not have lost any wages, salary, employment benefits, or other compensation by reason of the transfer.

As to other actual monetary losses, Plaintiff lists in her complaint that she is seeking damages for the cost of her education she is not able to use, the cost of a new education, spouse's wages, moving costs, and future medical care. Doc. 38 at 11. However, these damages were not "sustained by the employee as a direct result of the violation." 29 U.S.C. § 2617(a)(1). That is, the alleged FMLA violation is that Defendants demoted Plaintiff by assigning her to a new position. She sustained the listed damages when she voluntarily quit her job with APS, an action that the Tenth Circuit has affirmed was not constructive discharge. *See Strickland v. United Parcel Serv., Inc.*, 555 F.3d 1224, 1228 (10th Cir. 2009) ("The FMLA only permits the recovery of actual monetary losses, which in this case would be lost wages. Strickland did not stop working because she was terminated, so to recover damages in the form of lost wages, she must demonstrate she was constructively discharged."). Plaintiff has failed to make a showing that she incurred any actual monetary losses as a result of the alleged FMLA retaliation. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.").

Thus, the only remaining damages at issue are for emotional distress. *See* Doc. 38 at 11.

However, because recovery under the FMLA is "unambiguously limited to actual monetary

losses, courts have consistently refused to award FMLA recovery for such other claims as

consequential damages and emotional distress damages." *Walker v. United Parcel Serv., Inc.*,

240 F.3d 1268, 1277 (10th Cir. 2001) (internal citations omitted); *see also id.* at 1278 ("Section

2617(a)(1) does not provide for compensatory damages in general, but is instead expressly

limited to lost compensation and other actual monetary losses.").

In sum, although I recommend finding that material issue of fact exist regarding whether

Plaintiff can establish a prima facie case and show pretext, I ultimately recommend granting

Defendants' motion for summary judgment as to Plaintiff's FMLA retaliation claim because

Plaintiff suffered no injury redressable under the FMLA.[23] *See Walker*, 240 F.3d at 1277

(affirming summary judgment on an FMLA claim when the district court found the plaintiff

suffered no damages redressable under the FMLA). I therefore recommend granting Defendants'

motion for summary judgment on Plaintiff's FMLA retaliation claim (Doc. 154).

    e.  <u>State-Law Claims: Hostile Work Environment and Constructive Discharge</u>

In my April 2020 PFRD (as adopted by the Court), I recommended granting summary

judgment in Defendants' favor on Plaintiff's federal ADA claims for hostile work environment

and constructive discharge, reasoning that "no reasonable person could find that Plaintiff was

---

[23] Nominal damages are also not available to Plaintiff under the FMLA. *See Walker*, 240 F.3d at 1277.

subjected to a hostile work environment," and that Plaintiff failed to "provide any other facts through which a reasonable jury could determine that Defendants constructively discharged her." Doc. 110 at 21, 25. The Tenth Circuit affirmed these holdings. *Neri*, 860 F. App'x at 567-68. Defendants now argue, and I agree, that Plaintiff's state-law claims under the NMHRA for hostile work environment and constructive discharge fail for the same reasons her federal claims failed.

Under the NMHRA, "it is an unlawful discriminatory practice for an employer to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of . . . physical or mental handicap or serious medical condition . . . ." NMSA § 28-1-7(A). As discussed above, the New Mexico Supreme Court, in interpreting the NMHRA, has indicated that it is appropriate to rely on the ADA, as the closest federal counterpart. *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004, ¶ 8, 612, 41 P.3d 333 ("In interpreting our state Human Rights Act, we have previously indicated that it is appropriate to rely upon federal adjudication for guidance in analyzing a claim under the Act", and the "closest federal counterpart would be the Americans with Disabilities Act."); *see also Goodman v. OS Rest. Servs., LLC*, 2020-NMCA-019, ¶ 22, 461 P.3d 906 ("Our Supreme Court has instructed that in interpreting the NMHRA, it is appropriate to rely upon federal adjudication for guidance in analyzing a claim under the Act, with the caveat that we have not adopted federal law as our own, and that we do not bind New Mexico law to interpretations made by the federal courts of the federal statute." (internal quotation marks and citation omitted)); *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 23, 91 P.3d 58 (New Mexico courts "may look at federal civil rights adjudication for guidance in interpreting the NMHRA").

The standard under the NMHRA to establish a claim for hostile work environment is the same as under the ADA: "when the offensive conduct becomes so severe and pervasive that it alters the conditions of employment in such a manner that the workplace is transformed into a hostile and abusive environment for the employee." *Ocana*, 2004-NMSC-018, ¶¶ 23-24 (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)); *see also Neri*, 860 F. App'x at 566 (under the ADA, "[t]o avoid summary judgment on a hostile work environment claim, 'a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (quoting *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1171 (10th Cir. 2018))). Under both the NMHRA and the ADA, "[t]he work environment must be both objectively and subjectively offensive—one that a reasonable person would find hostile or abusive and one that the employee did perceive as being hostile or abusive." *Ocana*, 2004-NMSC-018, ¶ 24; *see also Neri*, 860 F. App'x at 566 ("The environment must have been both objectively and subjectively hostile." (internal quotation marks and citation omitted)).

The Tenth Circuit reviewed the following undisputed material facts regarding Plaintiff's ADA claim for hostile work environment: "Ms. Hoppman continually harassed her throughout the 2015/2016 school year; Ms. Hoppman changed her job's expectations and benefits throughout the 2015/2016 school year; in the April 14, 2016 IEP meeting Mr. Kegler shoved his chair into the wall and slammed his laptop shut; Ms. Hoppman told [her] that the April 14, 2016 incident was 'no big deal'; and Ms. Hoppman sent support for Mr. Kegler at the April 15, 2016 IEP meeting." *Neri*, 860 F. App'x at 567. The court found that Plaintiff "failed to show that these incidents were either pervasive or severe enough to create an objectively hostile work

environment." *Id.* In the present summary judgment motion, the only fact Plaintiff adds is that she finished the 2015/2016 school year with the same amount of completed IEPs as the previous two years. Doc. 172 at 29 ¶¶ C-3, D-4. This fact adds little to Plaintiff's hostile work environment claim. As the Court previously found, and as affirmed by the Tenth Circuit, Plaintiff fails to show pervasive or severe incidents to create an objectively hostile work environment under the NMHRA. As such, I recommend granting summary judgment in Defendants' favor as to Plaintiff's claim for hostile work environment under the NMHRA.

Looking next at constructive discharge, to establish a claim for constructive discharge under both the ADA and the NMHRA, a plaintiff must show that the conditions of employment were objectively intolerable and that she "had no other choice but to quit." *Gormley v. Coca-Cola Enter.*, 2005-NMSC-003, ¶ 10, 109 P.3d 280 (internal quotation marks and citations omitted); *see also Neri*, 860 F. App'x at 567. That is, "[a]n employee must allege facts sufficient to find that the employer made working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign." *Gormley*, 2005-NMSC-003, ¶ 10; *see also Neri*, 860 F. App'x at 567.

Reviewing her federal constructive discharge claim and the undisputed material facts, the Tenth Circuit found that "although Mrs. Neri perceived the transfer to be a demotion, she has not shown that a reasonable jury could find the conditions of the math teacher position so objectively intolerable that she had no other choice but to quit," because, in part, she "was offered a job making the same salary and carrying the same medical and dental benefits that she would have had as the IEP Teacher." *Neri*, 860 F. App'x at 567 (internal quotation marks and citation omitted). In the present motion, Plaintiff presents no new facts that would change this analysis.

As such, for the reasons the Tenth Circuit explained, I recommend granting summary judgment

in Defendants' favor as to Plaintiff's constructive discharge claim under the NMHRA.

      f.   <u>State-Law Claim: Actual Impairment</u>

     In addition to the state-law claims already discussed, one other claim under the NMHRA

remains at issue: discrimination based on actual impairment. Defendants did not move for

summary judgment on this state-law claim. However, given that the Tenth Circuit affirmed

summary judgment on Plaintiff's ADA claim for discrimination based on an actual impairment,

and given the similarity between the ADA and the NMHRA, I recommend granting summary

judgment on this state-law claim. Federal Rule of Civil Procedure 56(f) allows the Court to grant

summary judgment on grounds not raised by the parties or consider summary judgment on its

own after identifying for the parties material facts that may not be genuinely in dispute. That

Rule, however, first requires the Court to give notice to the parties and a reasonable time to

respond. Fed. R. Civ. P. 56(f). As such, I directed the parties to file supplemental briefs

regarding this state-law claim, Doc. 182, which they did, Docs. 186, 193, 194.

     As discussed above, under the NMHRA, "it is an unlawful discriminatory practice for an

employer to refuse to hire, to discharge, to promote or demote or to discriminate in matters of

compensation, terms, conditions or privileges of employment against any person otherwise

qualified because of . . . *physical or mental handicap or serious medical condition . . . .*" NMSA

§ 28-1-7(A) (emphasis added). The NMHRA defines physical or mental handicap as "*a physical*

*or mental impairment that substantially limits one or more of a person's major life activities*. A

person is also considered to be physically or mentally handicapped if the person has a record of

physical or mental handicap or is regarded as having a physical or mental handicap." NMSA §

28-1-2(M) (emphasis added). This is similar to the ADA's definition: "Disability is defined by

the ADA as '(A) *a physical or mental impairment that substantially limits one or more of the major life activities of such individual*; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" *Lanman v. Johnson County, Kansas*, 393 F.3d 1151, 1156 (10th Cir. 2004) (quoting 42 U.S.C. § 12102(2) (emphasis added)). I am unaware of any New Mexico law interpreting "a physical or mental impairment that substantially limits one or more of a person's major life activities" under the NMHRA differently than the federal counterpart and so will rely on the ADA case law. *See Trujillo*, 2002-NMSC-004, ¶ 8. Indeed, "in the context of an NMHRA medical condition discrimination case, the NMHRA terms 'serious medical condition' and 'handicap' are interchangeable with the ADA term 'disability.'" *Goodman*, 2020-NMCA-019, ¶ 22 (citing *Trujillo*, 2002-NMSC-004, ¶ 8).

Under the ADA, to establish actual impairment, a plaintiff "must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014). Using this test to examine Plaintiff's ADA claim for actual impartment, the Tenth Circuit did not dispute that Plaintiff has been diagnosed with PTSD and held that Plaintiff could testify about the physical and mental symptoms she has experienced. *Neri*, 860 F. App'x at 563. However, the court further held that her actual impairment claim failed because she did not "present medical evidence to link her PTSD diagnosis with her symptoms to establish that her PTSD substantially limits at least one major life activity." *Neri*, 860 F. App'x at 563; *see also Felkins*, 774 F.3d at 652-53 (10th Cir. 2014) ("[T]he failure of proof on which our decisions turns is that [the plaintiff] has not provided proper evidence that any limitation she may have is *caused* by [her claimed disability]."). In reaching this conclusion, the court noted that Plaintiff's expert, Ms. Poteet, "stated that the only expert opinion she would

offer 'is whether, in fact, [Mrs.] Neri has PTSD'", and that Plaintiff "does not point to any opinion linking any of her alleged limitations to her PTSD." *Neri*, 860 F. App'x at 562. Plaintiff's claim for discrimination under the NMHRA for actual impairment fails for this same reason. In the supplemental briefing, she continues to point to no expert opinion linking her alleged limitations to her PTSD.

Plaintiff makes several arguments in her supplemental brief that I recommend rejecting. First, she argues that under the NMHRA a person claiming discrimination is entitled to a trial de novo. Doc. 193 at 16; *see also* Doc. 193 at 20 (arguing that, because the Tenth Circuit remanded her claim for discrimination based on demotion, "this court needs to reinstate her claims and look at each of them anew."). Plaintiff's assertion about de novo review is correct. The NMHRA provides a grievance procedure through the human rights division of the labor department which ends in allowing the complainant to "seek a trial de novo in the district court." NMSA § 28-1-10(J). However, a trial "de novo" review does not mean that Plaintiff moves automatically to trial, but that the court makes "an independent determination of the issues, giving no special weight to the [administrative proceeding's] decision." *In re Hilgers*, 371 B.R. 465, 468 (B.A.P. 10th Cir. 2007), *aff'd*, 279 F. App'x 662 (10th Cir. 2008). Such is the case here—I am examining the issues without giving any weight to a decision in any administrative proceeding. Plaintiff's citation to *Contreras v. Miller Bonded, Inc.* is inapplicable to this case because *Contreras* deals with the application of collateral estoppel between an administrative adjudication and a de novo review in the district court—an issue not present in this case. 316 P.3d 202, 204 (10th Cir. 2013).

Next, Plaintiff discusses her entitlement to backpay (Doc. 193 at 18), an issue unrelated to determining actual impairment under the NMHRA and which I address below when considering Defendants' request for summary judgment on Plaintiff's damages.

Lastly, after the parties filed their supplemental briefs as directed by the Court, Plaintiff filed a "Motion for Leave to File Surreply to Defendants' Supplemental Briefing in Support of Defendants' Motion for Summary Judgment on State Claims and Damages." Doc. 196; *see also* Doc. 199 (Defendants' response in opposition). Plaintiff attached to her motion her proposed surreply (Doc. 196-1) and separately, filed the same surreply on the docket a few days later (Doc. 197). "A surreply is appropriate and should be allowed where new arguments are raised in a reply brief." *Navajo Health Foundation-Sage Memorial Hosp., Inc. v. Burwell*, 110 F. Supp 3d. 1140, 1180 (D.N.M. 2015). Plaintiff asserts that she needs a surreply in order to address several new arguments Defendants raised in their supplemental reply. Those "new" arguments include Defendants' argument that Plaintiff did not supply any evidence that would create a dispute of material fact and Defendants' argument in response to Plaintiff's assertion that they did not follow the local rules. Doc. 196 at 1-2. These arguments that Defendants made in their supplemental reply, however, are not new; instead, they address arguments and deficiencies in Plaintiff's response brief. *See* Doc. 193 at 4-7 (Plaintiff's supplemental response brief). Plaintiff also uses her motion for surreply to repeat her argument regarding a table of authorities, which she has made in multiple other fillings. Doc. 196 at 2. Because Defendants did not raise new arguments or issues in their reply, I recommend that the Court deny the motion for surreply (Doc. 196) and strike from the docket Plaintiff's surreply (Doc. 197).

Alternatively, if the Court disagrees with my recommendation and grants the motion for surreply, her surreply does not change my recommendation to grant summary judgment in Defendants' favor as to Plaintiff's claim for actual impairment under the NMHRA. That is, her surreply does not point to any medical evidence linking her alleged limitations to her PTSD but instead repeats arguments she previously made which do not overcome the fact that (as the Tenth

Circuit observed) she has failed to present evidence establishing that her PTSD has limited a major life activity. Plaintiff's citation to her medical records to argue that her PTSD substantially limits at least one major life activity does not alter this outcome. Doc. 196-1 at 2-3 (citing Doc. 146-1). Plaintiff still fails to point to any opinion by Ms. Poteet, or another medical expert, linking her alleged limitations to her PTSD. Thus, I recommend finding that Plaintiff's claim for discrimination based on actual impairment under the NMHRA fails.

> g.  Damages Under the ADA and NMHRA

In her operative complaint, Plaintiff requests damages for front pay, back pay (including her pension), and compensatory damages to include: (1) cost of the education she is no longer able to use (i.e. her student loans); (2) cost of a new education; (3) emotional distress; (4) future medical care; (5) loss of enjoyment of life; (6) health deterioration; (7) cost of lost home and cost of moving; (8) cost of unpaid bills; and (9) spouse's lost wages. The ADA incorporates the remedies available under Title VII, which in turn allows for recovery of back pay, front pay, and compensatory damages. *See* 42 U.S.C. § 12117(a ); 42 U.S.C. § 2000e-5(e)(3)(B), (g); 42 U.S.C. § 1981a. Likewise, a plaintiff can recover actual damages under the NMHRA. NMSA § 28-1-13(D). Defendants move for summary judgment on Plaintiff's claims for damages under the ADA and NMHRA, and I will address each category of damages in turn.[24]

First, Plaintiff requests front pay in the amount of her salary ($45,000) for 10 years—the amount of time before she had planned to retire. Doc. 38 at 11. She also requests back pay in the amount of her salary from September 2016 to August 2019. *Id.* Defendants correctly argue that Plaintiff is unable to recover back pay and front pay under the ADA and NMHRA because she

---

[24] Because I already discussed damages under the FMLA above (for Plaintiff's FMLA retaliation claim) I do not discuss those damages here.

resigned and was not constructively discharged. *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 342 (10th Cir. 1986) (examining damages under Title VII and holding that an employee is not entitled to back or front pay unless she was constructively discharged); *see also Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1237 (10th Cir. 2000) (holding that the 1991 amendments to the Civil Rights Act of 1964 embodied in 42 U.S.C. § 1981a (which allow for recovery of compensatory damages) do not alter *Derr* and the holding that a plaintiff is only entitled to back or front pay under § 2000e-5(g) when constructively discharged); *Chavez-Acosta v. Sw. Cheese Co., LLC*, No. 12 CV 353 JAP/CG, 2013 WL 11327604, at *3 (D.N.M. Sept. 4, 2013) ("The Court concludes that under the NMHRA, as under Title VII, lost wages are not recoverable by a claimant who resigns employment but fails to prove constructive discharge."). Here, as discussed above, the Tenth Circuit found that Plaintiff's federal claim for constructive discharge fails and I likewise recommend that her state-law claim for constructive discharge fails. As such, I recommend granting summary judgment in Defendants' favor on this issue and finding that Plaintiff is not entitled to recover back or front pay under the ADA and NMHRA.[25]

Defendants also move for summary judgment on Plaintiff's claims for compensatory damages under the ADA and NMHRA. According to § 1981a, the 1991 amendments to the Civil Rights Acts of 1964, a plaintiff may recover compensatory damages under the ADA, subject to the cap in § 1981a(b)(3), as the result of an illegal employment practice even when workplace discrimination did not rise to the level of constructive discharge. *Mallinson-Montague*, 224 F.3d

---

[25] Defendants raise alternative arguments regarding Plaintiff's claims for back and front pay including that she cannot show her damages were caused by Defendants and that she failed to mitigate her lost wages. Doc. 168 at 9-11. Because I find that Plaintiff is not entitled to lost wage damages because she was not constructively discharged, I do not address these alternative arguments. Additionally, Defendants argue that Plaintiff is not entitled to nominal damages (Doc. 168 at 11), which I do not address because Plaintiff has not requested nominal damages.

at 1236 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 253-55 (1994)). As defined in §

1981a, compensatory damages include future pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. 42

U.S.C. § 1981a(b)(3). Likewise, the NMHRA allows for recovery of actual damages and "the

phrase *actual damages* is synonymous with compensatory damage." *Behrmann v. Phototron*

*Corp.*, 1990-NMSC-073, ¶ 24, 795 P.2d 1015 (emphasis in original). Defendants argue that

Plaintiff is not entitled to compensatory damages because APS did not cause any of her

requested compensatory damages. *See Carter v. Sedgwick Cnty., Kan.*, 36 F.3d 952, 957 (10th

Cir. 1994) ("[O]ne of the central purposes of Title VII is to make persons whole for injuries

suffered on account of unlawful employment discrimination." (internal quotation marks and

citation omitted)); *Davoll v. Webb*, 194 F.3d 1116, 1143 (10th Cir. 1999) (applying *Carter* to a

claim under the ADA).

First, Defendants argue that there is no evidence that Plaintiff incurred $175,000 in auto

loans and moving expenses because of APS. In response, Plaintiff points to no evidence to

establish that Defendants cause such damages. Because Plaintiff bears the burden to prove her

damages, *see Niemi v. Lasshofer*, 770 F.3d 1331, 1355 (10th Cir. 2014), "Rule 56(c) mandates

the entry of summary judgment, after adequate time for discovery and upon motion, against a

party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial," *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986). When "the nonmoving party has failed to make a sufficient

showing on an essential element of her case with respect to which she has the burden of proof,"

the moving party is "entitled to a judgment as a matter of law." *Id.* at 323. As such, I recommend

granting summary judgment in Defendants' favor as to Plaintiff's claim for compensatory damages for her auto loan and moving expenses.

Next, Defendants cite to Plaintiff's deposition and argue that she is unable to explain her claim for $521,060 in future pecuniary loss or that Defendants caused such damages. At her deposition, when asked about future pecuniary losses Plaintiff testified that she does not "know what that means." Doc. 168-2 at 238:2-5 (Plf. Depo.). Her lack of knowledge regarding the phrase "pecuniary losses" is not the same as being unable to explain those losses, as Defendants argue. In her operative complaint she specifies that she is seeking damages for the cost of a new education, future medical care including therapy, unpaid bills, and her spouse's lost wages. Doc. 38 at 11.

As Defendants correctly point out and as discussed above regarding her auto loan and moving expenses, Plaintiff has presented no evidence to support her damages for future pecuniary losses—including costs of a new education, future medical care, cost of unpaid bills, spouse's lost wages—and that Defendants caused such damages by transferring her to the IEP position. *See Salazar v. Cont. Freighters, Inc.*, No. 18-CV-651-GKF-JFJ, 2019 WL 7605822, at *2 (N.D. Okla. Oct. 4, 2019) ("What Rule 56(e) does make clear is that a party cannot rest on the allegations contained in [her] complaint in opposition to a properly supported summary judgment motion made against [her]." (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968))). As such, I recommend granting summary judgment in Defendants' favor as to future pecuniary losses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Lastly, Defendants argue that Plaintiff cannot recover emotional distress damages because she testified that her claims for emotional pain, suffering, mental anguish, and loss of enjoyment of life are based on the stress of pursuing this lawsuit and not a result of the

underlying discrimination at issue in this case. I disagree with Defendants' characterization of her deposition testimony. Plaintiff testified at her deposition that her emotional pain is based on "the games everyone plays, based on . . . [her] 17 years in a position, based on the fact that every time [she] turn[s] around [she is] having to figure out what game is being played, what things are being done so [she] can make sure that [she] follow[s] the law." Doc. 168-2 at 239:8-13. I do not read this statement as narrowly as Defendants. That is, making all reasonable inferences in the light most favorable to Plaintiff, while this testimony indicates that Plaintiff attributes some emotional distress to the lawsuit, she also talks about her 17-year career with APS and her reference to "what game is being played" could be a reference to the alleged demotion by APS and Ms. Hoppman that led to this lawsuit. In other words, Plaintiff attributes her "downward spiral" to the actions of APS and Ms. Hoppman. *See* Doc. 172-1 ¶ 47 (Plf. Aff). Defendants' argument that most of Plaintiff's emotional distress is attributable to her own decision to file a lawsuit, rather than Defendants' actions, is more properly directed to the jury. As such, a dispute of fact exists regarding whether Defendants caused Plaintiff's emotional distress.

## RECOMMENDATION

For the reasons stated above, I recommend as follows:

- Given the Tenth Circuit mandate remanding a federal claim, the Court should no longer decline supplemental jurisdiction over Plaintiff's state-law claims.

- DENY Plaintiff's Motion for Expedited Order for Defendants to File Other Relevant Parts of Deposition (Doc. 184).

- DENY Plaintiff's Motion to Strike Defendants' Motions for Summary Judgments, Motion to Dismiss and Motion for Reconsideration due to Non-Compliance with Local Civil Rules of the United States District Court for the District of New Mexico (Doc. 183).

- GRANT IN PART Defendants' Motion for Reconsideration (Doc. 169) and reconsider the Motion to Exclude (Doc. 100) as it relates to Plaintiff's letter to Ms. Hoppman. DENY the remainder of Defendants' Motion for Reconsideration (Doc. 169).

- DENY Defendants' Motion to Exclude from Summary Judgment Consideration (Doc. 100) as to Exhibit 12 (Doc. 82-12) and Exhibit 14 (page 1) (Doc. 82-14 at 1), DENY AS MOOT the remainder of the Motion to Exclude, and DENY Defendants' request for attorney's fees and Plaintiff's request for sanctions.

- DENY IN PART Plaintiff's Motion to Reinstate her Federal Discrimination Claims (Doc. 140) as to claims that were dismissed by this Court and affirmed by the Tenth Circuit, and GRANT IN PART the motion as to those claims reversed and remanded by the Tenth Circuit.

- DENY Defendants' Motion to Dismiss (Doc. 154) as to Plaintiff's claim for FMLA retaliation and GRANT the motion to dismiss as to any claims for disability retaliation under the ADA or NMHRA.

- GRANT Plaintiff's request to reinstate her FMLA retaliation claim as made in her Memorandum in Support of her Motion to Reinstate Federal Discrimination Claims with Particular Reference to her Retaliation Claim (Doc. 153) and DENY her request to reinstate as to any disability retaliation claim under the ADA and NMHRA. Additionally, DENY Plaintiff's request for leave to amend her complaint to add disability retaliation claims.

- GRANT Defendants' Motion for Summary Judgment on Purported Retaliation Claims (Doc. 154) as to Plaintiff's claim for FMLA retaliation.

- GRANT IN PART Defendants' Motion for Summary Judgment on State Claims and Damages (Doc. 168 with Supplemental Doc. 186) as to Plaintiff's state-law claims for hostile work environment, constructive discharge, discrimination based on actual impairment, back and front pay, and compensatory damages for Plaintiff's auto loan, moving expenses, and future pecuniary losses; and DENY IN PART Defendants' motion for summary judgment as to Plaintiff's claim for compensatory damages for emotional distress.

- DENY Plaintiff's Motion for Leave to File Surreply to Defendants' Supplemental Briefing in Support of Defendants' Motion for Summary Judgment on State Claims and Damages (Doc. 196) and STRIKE Plaintiff's Surreply in Opposition to Defendants['] Motion for Summary Judgment on State Claims and Damages (Doc. 197).

For clarity, I also recommend finding that Plaintiff's claims fall into these categories:

- Claims remaining to be addressed at trial: alleged discrimination under the ADA and the NMHRA based on a demotion because APS regarded Plaintiff as being disabled.

- Claims dismissed: claims under the ADA and NMHRA for alleged discrimination based on actual impairment or record of impairment; hostile work environment; constructive discharge; failure to accommodate; FMLA and disability retaliation claims.

- For her remaining ADA and NMHRA discrimination claim, Plaintiff is unable to recover back and front pay, and compensatory damages for her auto loan, moving expenses, and future pecuniary losses, but may seek compensatory damages for emotional distress based on the demotion.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**